[No. 5075.    Decided April 21, 1904.]

# JACOB SWOPE et al., Plaintiffs, v. CITY OF SEATTLE et al., Defendants.[1]

CERTIORARI—HEARING—AFFIDAVITS NOT PRESENTED BELOW.    Upon a hearing in the supreme court upon a writ of certiorari to review an order of the superior court, affidavits not presented below cannot be considered, as the supreme court is restricted to the record actually made in the lower court.

MUNICIPAL CORPORATIONS—STREETS—GRADING—DAMAGE TO ABUTTING PROPERTY—INJUNCTION AGAINST GRADING.    Where a city has let a contract and is about to change the grade of a street so as to damage abutting property in excess of the benefits, injunction is the proper remedy of the owner, and the city may be restrained until just compensation has been paid, as required by Const., art. 1, § 16.

SAME—INJUNCTION—BOND—REQUIRING NEW BOND—DISCRETION OF LOWER COURT.    Before an injunction can issue against the grading of a street by a city, the plaintiff must be required to give a bond as required by Bal. Code, § 5438, and if insufficient, a new bond may be required, in the discretion of the court, to be exercised legally and not arbitrarily.

SAME—REQUIRING NEW BOND—SUFFICIENCY OF SHOWING—ABUSE OF DISCRETION.    Where abutting property was about to be materially damaged by the grading of a street, and plaintiffs' right to an injunction seemed clear, and an injunction was granted against such grading until compensation should be made for such damage upon the plaintiffs' giving a bond for $100, it is an abuse of discretion to require a further bond in the sum of $3,000, which is more than the value of the property, upon the application of the contractor, who did not deny any of the allegations of the plaintiffs, but merely made a showing that he would be greatly damaged by the delay, neither the city nor its officers applying for any further bond.

Certiorari to review an order of the superior court for King county, Bell, J., entered March 7, 1904, vacating an injunction issued February 28, 1904, and requiring an additional bond on the part of plaintiffs.    Reversed.

[1]Reported in 76 Pac. 517.

*C. L. Parker,* for plaintiffs.

*Mitchell Gilliam* and *Hugh A. Tait,* for defendants.

ANDERS, J.—On February 26, 1904, Jacob Swope and wife filed a complaint in the superior court in and for King county, alleging in substance that they now are, and at all times therein mentioned, have been, the owners and in possession of lots 13 and 14, in block 20, in Brooklyn Addition to the city of Seattle, which said lots are situated at the northeast corner of Tenth avenue, N. E., and Fortieth avenue, E., in said city of Seattle, King county, state of Washington; that the surface of said lots is practically level and at a suitable and proper grade with said streets as they have heretofore existed for the past five or six years, and as said streets have heretofore been graded and used, and as the said plat was accepted by the city of Seattle; that, on or about the year 1900, the plaintiffs constructed a dwelling house upon their said lots at great expense, which they have ever since occupied as their home; that said Tenth avenue, N. E., has heretofore been graded and "sidewalked," and said grade is a suitable one, and the grade of said streets at their said intersection is already about five feet below the surface of plaintiffs' said premises, and said dwelling house was located and built on said premises with reference to the grade of said streets as they then existed; that there is no necessity, in order to improve said streets and make them suitable for public use, to make any cut or fill at their said intersection; that the city of Seattle, through its board of public works, has let a contract to the defendant William Stanley for regrading said Tenth avenue, N. E., in front of said premises, and for grading said Fortieth avenue, E., at the south side of said premises, in such a manner as to cut down said streets at their

said intersection to a depth of approximately ten feet lower than the grade of said streets has heretofore been; that, in pursuance of said contract, the said William Stanley has partially cut said Fortieth avenue, E., to a depth lower than it heretofore was, and has partially removed, and is removing, and is about still further to remove, the earth from plaintiffs' said property so as to make a slope from the surface thereof down to the grade established by the city of Seattle, and to a depth of nine or ten feet below the present surface of said premises; that the said contractor has removed earth from the plaintiffs' said premises to a distance of several feet back from the front and west marginal lines of said premises, and is proceeding to remove earth and soil from the said premises and intends to cut said premises, and the street in front of the same, down to a depth of nine or ten feet below the present level of the street in front of said premises, and is about to remove a strip of earth from the west part of said premises to make them conform to the new grade as recently established by the city of Seattle, for a distance of eighteen or nineteen feet east and west, by a distance of about eighty-three feet north and south, and for a depth of from thirteen to fifteen feet; that the said city, through its board of public works, and by its said contractor, is about to lower the present grade of said streets about nine or ten feet in front of plaintiffs' said premises; that, unless the defendants be restrained from so doing, they will immediately change the street grade in front of plaintiffs' lots as aforesaid and remove approximately twenty per cent of the surface of plaintiffs' premises where they join said streets, and leave the balance of said premises standing from thirteen to fifteen feet above the proposed new grade of said streets, and that, by reason thereof, the said premises will be greatly damaged and injured, and it

will be necessary for plaintiffs to spend a large sum of money to build bulkheads around said lots to retain the earth therein, and it will be impossible for plaintiffs to drive onto said premises with fuel, and will hereafter cause an increased annual expense for getting fuel and other material from the streets to the surface of said lots, and to the plaintiffs' said dwelling house; that the grade of said streets as heretofore established is an easy and suitable grade, and such that loaded wagons can be driven therefrom onto plaintiffs' premises, and the change of grade as proposed and now being carried out by defendants will not benefit the plaintiffs' property, but, on the contrary, will damage it in the sum of $2,000; that none of the defendants has made or paid into court for the plaintiffs any compensation whatever for damaging their premises as aforesaid, but, on the contrary, they claim and assume the right to grade said streets and to remove plaintiffs' soil from said premises without first making compensation to plaintiffs, as provided by law and the constitution of this state; and that the plaintiffs have no remedy at law to enforce the payment of said damages before such damages are committed.

In their complaint the plaintiffs prayed that a restraining order be issued, enjoining the defendants from further proceeding in the grading of said streets, and from removing any earth from plaintiffs' said premises, until just compensation be made for taking and damaging said premises, and that a time be set by the court in said restraining order within which compensation shall be made, and that it be further ordered that, upon failure to make such compensation within the time limited by the court, the restraining order be made permanent, and the defendants, and each of them, and their agents and employees, be ordered and directed forthwith to cease

all work and all further proceedings in grading said streets, until the further order of the court and for their costs and disbursements.

At the time of filing their complaint, the plaintiffs filed an affidavit of Jacob Swope, which is practically a repetition of the allegations of the complaint, and, upon the complaint and accompanying affidavit, they moved the court for a restraining order directing the defendants to refrain from doing any of the acts complained of in the complaint until the further order of the court, and to show cause why such temporary restraining order should not be made permanent. An order was thereupon issued directing the defendants, and each of them, to appear before Hon. W. R. Bell, one of the judges of said court, on the 4th day of March, 1904, at 9:30 o'clock, A. M., of said day, or as soon thereafter as counsel could be heard, to show cause why such restraining order should not issue. An emergency order was also entered, restraining the defendants and their agents and servants from suffering or committing any of the acts complained of until the further order of the court. The amount of the bond to be given by plaintiffs was fixed at $100, and such bond was duly executed, approved, and filed according to law.

On March 3, 1904, the defendants William Stanley & Co. appeared in the action and moved the court to require the plaintiffs to make, execute, and file in the cause an additional bond, conditioned as required by law, in the penal sum of $5,000. This motion was based upon all the records and files in the cause, and upon the affidavit of Samuel Stanley, which was served and filed therewith. The affidavit of Samuel Stanley, in support of the motion for an additional or a larger bond, states that the defendant William Stanley is a member of the copartnership of William Stanley & Co., which company

was, at the time of the commencement of this action, engaged in grading the streets in front of the property described in plaintiffs' complaint, under and pursuant to a contract theretofore entered into between the city of Seattle and William Stanley & Co.; that said William Stanley & Co. have a large number of men and teams employed on said work, and, by reason of such fact, said William Stanley & Co. are being damaged in the sum of not less than $150 per day for each day they are prevented from continuing said work; that said William Stanley & Co. are limited by their contract with the city to a certain time in which to complete said work, and are bound by said contract to pay a large sum per day as penalty and liquidated damages for each day the completion of said work is delayed beyond the time agreed upon. And affiant further says that he has fully stated the facts regarding the action to one of his attorneys, and is advised by him, and therefore alleges the fact to be, that said William Stanley & Co. have a good and valid defense to said action.

Upon the showing thus made by the contractors, William Stanley & Co., it was ordered by the court, on March 4, 1904, that the plaintiffs execute and file a good and sufficient bond, conditioned as required by law, in the sum of $3,000, the same to be filed on or before March 7, 1904, and that, in the meantime, the temporary restraining order heretofore issued herein be suspended, and that on failure of plaintiffs to file said bond on the morning of said March 7, the temporary order heretofore issued be vacated and set aside. The plaintiffs having failed to comply with the order last above mentioned, within the time therein designated, the court, on the 7th day of March, 1904, "vacated, set aside, and annulled" the temporary restraining order issued on the 26th day of February,

1904. On the following day the plaintiffs, by their coun-
sel, applied to this court for a writ of certiorari to re-
view the said rulings and orders of the superior court.
On March 11, 1904, the writ was accordingly issued, com-
manding the superior court in and for King county, and
W. R. Bell, one of the judges thereof, to certify and trans-
mit to this court, at the court room thereof in the city of
Olympia, on the 25th day of March, 1904, at 10 o'clock
in the forenoon of said day, a transcript of the record
and proceedings in that certain action then pending in
said superior court wherein Jacob Swope and Elizabeth
Swope are plaintiffs and the city of Seattle *et al.* are de-
fendants. And the said court and judge were further
ordered and directed to show cause before this court, on
said 25th day of March, 1904, why the order of said su-
perior court made and entered on March 7, 1904, setting
aside the temporary restraining order issued out of the
said superior court on February 26, 1904, should not
be vacated and annulled, and why the said temporary
restraining order should not be reinstated without addi-
tional security from the said plaintiffs, upon the records,
files, and proceedings before the said superior court at the
hearing of the motion of the said William Stanley & Co.,
for additional security from said plaintiffs. The said
court and the said defendants were also required and
directed to desist from any further proceedings until the
further order of this court.

In response to this writ the superior court certified and
sent up to this court the records, files, and proceedings
designated in said writ, and which we have hereinbefore
set out. At the hearing the defendants appeared by coun-
sel and produced affidavits going to show a defense to the
action on the merits, but it seems plain to us that, in
this proceeding, we are restricted to the consideration of

the record as actually made in the court below. Matters which were not presented to the lower court cannot be received here to vary or contradict the record.

Our constitution, art. 1, § 16, provides that, "no private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner." And the plaintiffs, claiming that their property was being taken and damaged for public use, filed their complaint for an injunction, setting out the acts of the defendants, which they deemed violative of their constitutional rights. Upon the showing made by the plaintiffs—and which was certainly sufficient—the judge to whom the application was made issued the temporary restraining order above mentioned, and fixed the bond to be given by plaintiffs at a sum deemed by him proper and reasonable under the circumstances.

That injunction is a proper remedy in cases of this character has uniformly been held by this court. See, *Brown v. Seattle,* 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161; *Olson v. Seattle,* 30 Wash. 687, 71 Pac. 201, and cases cited. In *Brown v. Seattle, supra,* this court, after a careful consideration of the constitutional provision above quoted, and the decisions of other courts based upon similar provisions, announced the doctrine that damages are recoverable from a city, by the owner of land abutting upon a street, for any permanent injury inflicted upon such land by any material change of grade or obstruction to the abutter's access to the street, when the damages thus inflicted exceed the benefits derived from the grading or other improvement; and that when the proposed grading of a street will seriously depreciate the value of abutting property, the grading may be enjoined until the damages be ascertained and

compensation made or paid into court for the owner. And the rule there laid down, as was said in *Olson v. Seattle, supra,* "has been followed in practice ever since." See, also, *State ex rel. Smith v. Superior Court,* 26 Wash. 278, 66 Pac. 385, wherein the question now under consideration was elaborately discussed.

But, while it is clear that an owner of property abutting upon a street may, by injunction, prevent a municipality from damaging the same, without first making compensation therefor, by materially changing the grade of the street in front thereof, it is equally clear that one who invokes the remedy of injunction and asks for an injunction or restraining order, *pendente lite,* must comply with the statute requiring the execution of a bond to the adverse party. Bal. Code, § 5438. When a statute requires the giving of a bond as a condition precedent to the granting of an injunction or restraining order, the court has not the power to disregard such statute and dispense with the bond. 2 High, Injunctions (3d ed.), § 1620; 1 Spelling, Injunctions (2d ed.), § 935. See, also, *Keeler v. White,* 10 Wash. 420, 38 Pac. 1134; *Cherry v. Western Wash. etc. Co.,* 11 Wash. 586, 40 Pac. 136. But where the bond given for obtaining a preliminary injunction is shown to be insufficient, a new bond may be required in a proper case, as a condition precedent to continuing such injunction to trial. 2 High, Injunctions (3d ed.), § 1626; 1 Spelling, Injunctions (2d ed.), § 941. No new bond, however, should be ordered in such cases, unless good reason be shown why the bond already given is insufficient. In injunctions and restraining orders, the legislature has confided the duty of fixing the amount of the bond to the court or judge granting the order (Bal. Code, § 5438), but this is a legal and not an arbitrary discretion, and, in the language of the supreme court of

Louisiana, "in case of abuse and denial of justice by unreasonable and oppressive requirements, we should not hesitate to extend relief." *Bell v. Riggs,* 37 La. Ann. 813.

The only question, therefore, for determination in the case at bar, is whether the superior court, upon the showing made by the defendants Stanley & Co., was justified, in the exercise of the discretion vested in it by law, in ordering the plaintiffs to execute a new bond, and in annulling and setting aside the bond originally required by the court, and given by the plaintiffs. Assuming that the allegations of the complaint are true, it clearly appears that the city, by its agents and servants, was inflicting great injury and damage upon the plaintiffs' premises, in direct contravention of one of the plain and mandatory provisions of the constitution. And, it thus appearing that the plaintiffs' rights were clear and that such rights were being illegally invaded by the defendants, the court, in the absence of a statute requiring the giving of a bond, would have been fully warranted in issuing the restraining order without any security whatever from the plaintiffs.

It must be borne in mind that neither the city nor its board of public works moved the court to require the plaintiffs to give additional security. That motion, as we have already said, was made by William Stanley & Co. alone, and was based upon the records and files in the cause, and the affidavit of Samuel Stanley. And it will be observed that that affidavit controverted none of the facts stated in the verified complaint, or the additional affidavit of Jacob Swope, one of the plaintiffs. It did not show that the city, its officers and contractors, or either or any of them, were rightfully interfering with the property of the plaintiffs, or even that the defendants were doing the things complained of in the exercise of a power conferred upon them

by statute, or by an ordinance of the city. It simply set out facts showing that William Stanley & Co., who, as we have said, were merely the agents and servants of the city, will be greatly damaged if prevented from grading the streets adjacent to plaintiffs' premises in accordance with the terms of their contract. But the fact that the contractors may be bound to pay the penalty exacted by the city for delay in the completion of their work certainly constitutes no sufficient reason why the plaintiffs should be deprived of their constitutional rights, or why the plaintiffs should be required to give a bond in an amount equal to the full value of their property in order to secure those rights. No brief has been filed or authorities cited by either party to this proceeding, and we have based our decision solely upon our view of the law, and the just and equitable rights of the parties, as they are disclosed by the record before us. Upon the showing made before him, we are constrained to conclude that the learned judge of the court below was not warranted, either in requiring the plaintiffs to execute the new bond designated in his order, or in setting aside the bond theretofore given by the plaintiffs in compliance with the previous order of the court.

The judgment is therefore reversed, and the cause remanded, with instructions to reinstate the bond given by plaintiffs on February 26, 1904.

FULLERTON, C. J., and HADLEY and MOUNT, JJ., concur.