[No. 27657.   Department Two.   March 7, 1940.]

UNITED STATES FIDELITY AND GUARANTY COMPANY,
*Respondent*, v. BESSIE C. BARROW, *Individually
and as Administratrix, Appellant.*[1]

[1]Reported in 99 P. (2d) 949.

*John G. Barnes,* for appellant.

*McClure & McClure* and *John R. Martin,* for respondent.

GERAGHTY, J.—This appeal is from an order granting an injunction *pendente lite.*

Benjamin H. Barrow, now deceased, was engaged in business as a plumbing, ventilating, and heating contractor under the trade name of Westlake Plumbing and Heating Company. In September, 1938, he entered into three contracts: One with Everett School District No. 24, for installing the heating and ventilating systems in an auditorium and a gymnasium, for the sum of $40,600; another, for installing the plumbing in the same building, for $19,430; and one with the state highway department, for installing the plumbing and heating systems in its building at Wenatchee, for $9,800.

The contracts contained the customary provisions requiring payment, at stated times, of the wages due all workmen employed on the work, as well as all material claims and other services used in connection therewith. They also required the contractor to carry sufficient insurance on the work, as it progressed, in favor of the owners as their interest should appear. Each of the contracts provided that the contractor should furnish a bond, with a surety company as surety, in the full amount of the contract, for the faithful performance of all its terms and conditions, and for the payment of all laborers, mechanics, subcontractors, and materialmen, and all persons supplying him with provisions and supplies for carrying on the work.

The bonds were executed by Barrow as principal and the United States Fidelity and Guaranty Company as surety. In Barrow's written application for the bonds, he agreed, among other things, to indemnify the surety against all loss or liability it might sustain by reason of their execution, and he assigned to the surety company, as collateral to secure his obligations, all his right, title, and interest in and to the contracts, including all retained percentages, deferred payments, earned moneys, and all moneys and property due or to become due under the contracts. He agreed that, in the event of any breach of the contracts or of the performance bonds by the contractor, the surety should have the right, at the contractor's expense, to complete the work or to contract for its completion; and it was finally stipulated that the agreements therein contained should bind Barrow, his heirs, personal representatives, successors and assigns.

February 15, 1939, Barrow died intestate, and his surviving widow was immediately appointed administratrix of his estate and qualified by filing her oath of office and a bond in the sum of fifteen hundred dollars, as provided in the order of appointment. At the time of Barrow's death, work on the two school contracts was in progress; the highway department contract was substantially completed, but the retained percentage had not been paid by the department.

This action was instituted by the surety company March 14, 1939. It is alleged in the complaint that, individually and as administratrix, the defendant had entered upon the task of finishing the work required by the contracts; that she was a housewife and inexperienced in business; that the plaintiff had demanded that it be given access to the books and records of the work performed, and that the moneys collected on each of the contracts be segregated and kept in a special

fund, separate and apart from other moneys and under the sole control of plaintiff; that plaintiff be given authority to issue checks in connection therewith; and, out of the moneys collected and received on each contract, the claims for labor and materials and all other proper claims be paid. It was alleged that all of these demands had been refused by the defendant, and that she had insisted on her alleged right to collect and receive such moneys and to dispose of them in such manner as to her should seem proper; that she

" . . . threatens to collect and receive the moneys due and to become due on each of said contracts and to apply said moneys or a substantial portion thereof to payment of claims and expenses other than for materials purchased and labor performed in the execution of the contracts and to leave unpaid labor and material claims."

It was alleged that each of the contracts had been breached as follows:

"(a) Defendant had not carried, and is not now carrying, fire insurance as required; (b) Defendant has not paid, and is not paying, her employees, subcontractors and materialmen; (c) Defendant has not paid, and is not paying, transportation and utility services as required by the contracts."

It was further alleged that demands had been made on defendant for moneys due and unpaid on account of materials furnished and labor performed under the contracts, and that she had not paid such claims; that she was using moneys received by her under the contracts for purposes other than the payment of claims, and permitted just claims to remain unpaid, and, unless restrained and enjoined, would continue to do so; that, unless such claims were paid, the plaintiff would become liable therefor; and that defendant had little, if any, financial responsibility, and, if losses were suf-

fered by plaintiff, the recovery of any part thereof from her would be impossible.

The complaint prayed for an order enjoining the defendant, during the pendency of the action, from collecting or receiving any moneys due or to become due under the contracts, and that the plaintiff be granted the right, at all reasonable times, to inspect books of account and other records kept by the defendant in relation to the performance of the contracts, and be given the right to collect all such moneys and to disburse the same in payment of all labor performed and materials furnished in their performance.

A show cause order was issued, returnable March 17th. The hearing was continued to March 21st, and thereafter to the 24th of that month, at which time the application was heard on the complaint and affidavits filed by the parties.

In an affidavit filed by herself, the defendant denied that she had "individually" entered upon the performance of the work required under the contracts or had threatened

". . . to collect and receive the moneys due and to become due on each of said contracts and to apply said moneys or a substantial portion thereof to payment of claims and expenses other than for materials purchased and labor performed in the execution of the contracts and to leave unpaid labor and material claims."

She denied that she had failed to carry insurance as required in the contracts, and also denied the allegation in the complaint that she had not paid, and was not paying, her employees, subcontractors, and materialmen, nor transportation and utility services. She stated that the claims arising out of the contracts which she had not paid arose prior to the death of her hus-

band, and that she had been advised that these claims must be

" . . . served, filed, and administered upon in the Matter of the Estate of Benjamin H. Barrow, deceased, in accordance with the laws of the state of Washington in such case made and provided."

She denied that she was using moneys received by her under the contracts for purposes other than the payment of claims, or that she was permitting just claims to remain unpaid, or would continue to do so.

In an affidavit, John G. Barnes, attorney for the defendant, averred that a request had been made of him by a representative of the bonding company that he procure the signature of the defendant as administratrix to papers whereby she was to set up separate accounts for each job, and that the bonding company should have the right to countersign all checks drawn against each of the accounts; that she had told the company's representative that defendant would do "nothing of the kind," that "already one bonding company was countersigning all her checks issued by her as administratrix, and that was enough."

He stated that the architect on the school jobs had certified estimates of the work performed during the month of February, and, on March 13th, the administratrix applied for warrants for the amounts due her under the estimates; that she was given a letter signed by the secretary of the school district advising her that, in view of the fact that the district had been served with a notice of default in a payment due the Powers Regulator Company and had been requested by the plaintiff bonding company not to deliver payments on the contracts without the company's permission, the district was withholding the estimates representing the amount due for February work on the contracts.

Mr. Barnes said that the amount due the Powers

Regulator Company was for a transaction occurring before Mr. Barrow's death. He called later upon the officers of the school district and was shown a letter from the bonding company requesting the district not to make any payments under the contracts without the consent of that company, whereupon the administratrix notified the school district that, because it had breached its contracts by refusing to pay her the estimates for work performed during the month of February, she would not perform any more work under the contracts, "and was then and there stopping all work thereunder, which she did."

In an affidavit made by G. D. Reeves, secretary of the school district, it was stated that the contractor was in default on the two school jobs in several respects. Notice had been received by the district that material and labor was supplied by the Power Regulator Company prior to the 23rd day of January, 1939, in the amount of seven hundred dollars, and that the company had not been paid. The district had received notice that material was furnished by another supply company for use on both of the contracts, in the total amount of $7,527.20; that small merchandise credits were allowed for some items returned; that some payments had been made on this account, but that there was due and owing to the supply company the sum of $5,256.91; that the district had also received notice from another supply company of its claim against the contractor, the contracts, and the bonds, in the sum of $2,820. Reeves further stated that, on March 17th, he had received a letter referring to the contracts, reading in part as follows: ". . . the undersigned hereby elects so to do and does hereby declare said contracts, and each of them, cancelled, annulled and rescinded." The letter was signed by Westlake Plumbing and Heating Company, by Bessie C. Barrow, as admin-

istratrix of the estate of Benjamin H. Barrow, deceased.

Reeves further stated that, under the terms of the contracts, the school district was authorized to withhold payment at any time it appeared to the district that the contractor had failed to pay subcontractors, laborers, or for the materials used on the contracts; and that, for this and other reasons, the school district had withheld payment of the February estimates on both contracts.

John R. Martin, one of the attorneys for the plaintiff, stated in an affidavit that he had made an investigation to determine whether or not claims against the two Everett jobs involved in this litigation were unpaid, and found that a number of claims for materials furnished were outstanding and had not been paid.

J. C. McCollister filed an affidavit saying that he had verified the complaint as agent of the plaintiff, and "repeats, refers to, and makes a part hereof each and every allegation in said complaint contained." The affidavit also sets out the conditions material to the issues embodied in Barrow's application to the surety company for execution of his contract bonds.

The order made by the court March 31st enjoined the defendant individually and as administratrix, during the pendency of the suit and until the further order of the court, from collecting any moneys due or to become due upon the three contracts, or any of them, and empowered the plaintiff to collect and disburse all moneys accruing for work performed and material furnished in the execution of the contracts and to issue checks on the funds so collected in payment for labor and material furnished, and for other proper purposes. The only provision for a bond for injunction in the order was in relation to the highway department contract, as follows:

"That as a condition precedent to plaintiff receiving, collecting and accepting any moneys whatsoever on account of the contract entered into between Benjamin H. Barrow and the Highway Department of the State of Washington, for furnishing and installing the plumbing and heating systems in the State Highway Building at Wenatchee, Chelan County, Washington, plaintiff shall furnish a bond in the penal sum of $1000.00 to be approved by the court, to Bessie C. Barrow, individually and as administratrix of the estate of Benjamin H. Barrow, deceased, conditioned that if the said United States Fidelity and Guaranty Company, a corporation, its successors or assigns, faithfully and truly accounts for all moneys so received and collected by it due and to become due on account of said contract and shall disburse same in accordance with law and shall charge against said moneys so collected only reasonable and proper disbursements in accordance with law and the contracts between plaintiff and Benjamin H. Barrow, deceased, then said obligation shall become null and void; otherwise to be and remain in full force and effect."

The appeal is taken from this order.

■ The showing made by the respondent was sufficient to warrant the granting of an injunction *pendente lite*. The fact alone that the appellant had notified the school district of her election to cancel, annul, and rescind the two school contracts, and had, in fact, suspended the work, created a condition, as to them, calling for the interposition of the court by a temporary injunction.

Appellant argues that the office of a temporary injunction is to preserve the *status quo* until the final determination of the cause on its merits, and that the court went beyond this in directing payment of the money earned on the contracts to the respondent and by its disbursement in payment of labor and material supplied on the work. But, under the circumstances

obtaining here, the *status quo* would not have been preserved by mere inaction. The contracts obligated the contractor or, upon his default, the surety, under penalties, to prosecute the work to completion and to pay, at regular stated intervals, for all labor, material, and supplies furnished on the work. The appellant having abandoned the contracts, the responsibility for their completion devolved upon the respondent. The court below was not concerned with the ultimate merits of the cause as between the parties; its proper concern was with the conditions existing at the time the order for injunction was made.

The status of the highway department contract was somewhat different from the other two. While the affidavits did not refer to the fact, it is conceded that, at the time of the hearing, the work required by that contract had been finished and there remained to be done, in respect to it, only a proper application of the unpaid estimates and the retained percentage.

It is to be inferred from the affidavits of the appellant and her attorney that she maintained the position, at least as to all obligations incurred in the performance of the contracts prior to her husband's death, that claims would have to be filed in the estate and paid in due course of administration.

Assuming the correctness of this position if claimants should look to the estate for payment, nevertheless, laborers and materialmen had, under the terms of the statute relating to bonds or contracts for public works, an independent right of action against the surety and a right of lien on the retained percentages. The retained percentages constituted not only a trust fund to which the laborers and materialmen could look for payment, but were also for the protection of the surety.

The appellant invokes the general principle

that courts will not grant, by way of temporary injunctions, the full measure of relief to be had only on a final disposition of the case. Whatever may be the force of this principle, it cannot be said that it was violated here. The order did not purport to make a final determination of the rights of the parties; by its terms, the injunction was to remain in force only until the final determination of the case or the further order of the court.

■ The appellant contends that the court erred in granting the injunction without requiring the respondent to give a bond conditioned as required by Rem. Rev. Stat., § 725 [P. C. § 8059], which provides:

"No injunction or restraining order shall be granted until the party asking it shall enter into a bond, in such a sum as shall be fixed by the court or judge granting the order, with surety to the satisfaction of the clerk of the superior court, to the adverse party affected thereby, conditioned to pay all damages and costs which may accrue by reason of the injunction or restraining order. . . ."

In *Western Academy of Beaux Arts v. De Bit,* 101 Wash. 42, 171 Pac. 1036, the lower court granted a temporary restraining order without requiring a bond for injunction. On appeal, this court held that, while the facts appearing at the hearing below warranted the granting of a temporary injunction, it was error to grant it without the bond required by the statute, saying:

"Where a statute requires the giving of a bond as a condition precedent to the granting of an injunction, the court is not at liberty to disregard such statute, and it is error in such case to grant the injunction without the required bond. 2 High, Injunctions (4th ed.), § 1520; *Keeler v. White,* 10 Wash. 420, 38 Pac. 1134; *Cherry v. Western Washington Industrial Exp. Co.,* 11 Wash. 586, 40 Pac. 136; *Swope v. Seattle,* 35 Wash. 69, 76 Pac. 517."

The respondent contends, first, that no bond was required in respect to the school district contracts because the appellant, having elected to rescind, had no further interest in them, and that her remedy would be by a suit against the district for damages sustained by its breach of the contracts in refusing to pay earned estimates. But that issue was not before the court. The cause was not being tried on the merits, nor was the school district a party. Whatever may have been the appellant's interest in the contracts, respondent conceived it necessary to seek a temporary injunction against her. Under the statute, the injunction could be granted only by an order embodying the requirement for a bond.

The respondent's second answer to the appellant's contention is that a bond for injunction was, in fact, given; and that, under the rule announced in *Swope v. Seattle*, 35 Wash. 69, 76 Pac. 517, where a bond given for a preliminary injunction is shown to be insufficient, a new bond may be required in a proper case. That rule would be applicable here if the bond required, though insufficient in amount or in some respects irregular, had been broad enough to cover the three contracts upon which the injunction was operative. The requirement of the statute is that the bond is to be conditioned *to pay all damages and costs which may accrue by reason of the injunction and restraining order.*

We think that it would be playing with words to say that the bond ordered to be given met with the requirements of the statute. While there was but one order for injunction, it affected three separate and independent contracts. The *Swope* case recognizes the rule that, where a statute requires the giving of a bond as a condition precedent to the granting of an injunction or a restraining order, the court has not the power to disregard the statute and dispense with the bond.

The question involved in that case was the sufficiency of the amount of the bond and the right of the superior court to require a larger bond as a condition for the continuance of the injunction. The present case does not come within the rule announced in the *Swope* case, because, in respect to the two school contracts, the question is not the sufficiency of the bond, but the absence of any bond. We are constrained to hold that, in respect to these two contracts, the order for injunction was erroneous. In so far as the injunction related to the highway department contract, the bond required was adequate in form, and the question of its amount was for the trial court to determine in the first instance.

The cause is returned to the superior court with direction to modify the order for injunction in accordance with the views expressed in this opinion.

This order is made without prejudice to the right of the respondent to make further application to the court for injunctive relief pending final determination of the action.

BLAKE, C. J., BEALS, STEINERT, and JEFFERS, JJ., concur.