NATIVE LUMBER COMPANY ET AL. *v.* BOARD OF SUPERVISORS OF HARRISON COUNTY ET AL.

[42 South. Rep., 665.]

1. CHANCERY COURT. *Jurisdiction. Division of county into court districts. Election. Control of returns.*

    A court of equity is without jurisdiction to canvass the returns and declare the result of an election for the division of a county into two circuit and chancery court districts where the legislature has committed the whole matter to the election commissioners and the board of supervisors.

2. CONSTITUTIONAL LAW. *Constitutional questions not decided unless necessary.*

    Constitutional questions will not be passed upon by the courts unless they be absolutely necessary to the decision of the case.

FROM the chancery court of Harrison county.

HON. THADDEUS A. WOOD, Chancellor.

The Native Lumber Company and others, the appellants, were complainants in the court below; the board of supervisors and the board of election commissioners of Harrison county were defendants there. From a decree dissolving an injunction, sustaining a demurrer to the bill of complaint and dismissing the suit the complainants appealed to the supreme court.

An election was held in a part of Harrison county under the provisions of what purports to be an act of the legislature (ch. 167, p. 185, laws of 1906), providing for the submission to the voters of a designated part of the county the question of a division of the county into two court districts. The bill charged that fraud was practiced at one voting precinct in said county, and that false returns were made to the election commissioners, and that the election commissioners unlawfully refused to count certain ballots cast against the creation of a

second court district, and fraudulently manipulated the returns of said election, so as to show a false majority of one vote in favor of a division of the county into two districts, when in truth the majority was largely, at least fifty votes, against the division of the county. The bill further charged that the election commissioners failed to file with their report to the board of supervisors the tickets, tally sheets and ballot boxes, but concealed them, in order to prevent a fair count, and prayed an injunction restraining the board of supervisors from entering any order declaring the election to have been carried in favor of a division of the county, or any order creating the second district, and also sought a mandatory injunction requiring the election commissioners to file with the clerk of the court the ballot boxes, tally sheets and tickets, and that the election be declared to have been carried against a division of the county. The constitutionality of the act of the legislature under which the election was held was assailed in the supreme court, but was not decided.

*Ford & White,* and *McWillie & Thompson,* for appellants.

The propositions which we present on this appeals are:

1. The complainants, citizens and taxpayers of the county, were authorized to maintain this suit, and a court of equity has jurisdiction thereof.

2. The act of the legislature, approved March 18, 1906, Laws 1906, p. 185, is unconstitutional and void.

(*a*) It undertakes to authorize the division of the county into two circuit and chancery court districts upon a mere majority vote of the electors of the proposed new district.

(*b*) It was approved, if at all, April 18, 1906, and was passed, if at all, at a special session of the legislature which met January 2, 1906, and remained in session until after the expiration of thirty days from the date of its meeting, and until after the expiration of the time during which the governor,

by proclamation, extended the time of the session; the governor's proclamation extended the session only until April 14, 1906, and the governor was without power to extend the session a second time.

(*c*) The legislature at its special session in 1906 was without power to pass the act, and the governor could not by proclamation authorize it to do so.

3. Under the averments of the bill in this case, which are admitted by the demurrer, the election was fraudulent, it was not carried in favor of the establishment of the second district in Harrison county, and the demurrer to the bill and the motion to dissolve the injunction should have been overruled.

Since the question of jurisdiction ought always to have precedence, we will discuss that first.

That the chancery court has jurisdiction of the case is, we think, too plain for disputation. The complainants are citizens and taxpayers. They show that the county is about to incur large expenses in the erection of public buildings at the alleged new court house town, and they will thereby, as taxpayers, be damaged. They show, further, that the election held under the special act was a fraud pure and simple. It really resulted against the division of the county, but designing election officers have falsely changed the count, reported that the election had carried in favor of division, when it had not been carried at all; these officers suppressed the ballot boxes, tally sheets and ballots and are still suppressing them so as to prevent them being used in proving the falsity of their return. All this is admitted. Complainants obtained an injunction restraining the iniquity. It will be remembered that the act under which the election was held nowhere provides any mode or manner in or by which the election can be contested. This being true, authorities elsewhere for the maintenance of this bill are not wanting. See Cyc., p. 398, note 2; 10 Am. & Eng. Ency. Law (2d ed.), 817, note headed "County Seat Elec-

tions." A court of this state, however, does not need any authority on the proposition of jurisdiction in cases like this save the case of *Simpson County* v. *Buckley,* 81 Miss., 474, wherein this court decided, that under the constitution of 1890, sec. 259, regulating the removal of county seats, a citizen and taxpayer may in his own name and behalf maintain a proceeding in equity to prevent a violation of the constitution by unauthorized and unlawful action of the board of supervisors. It will not do to say in answer to the application of the Simpson county case to the question now before the court that the election under consideration was not one for the removal of the county seat. The very suggestion seems to us to be absurd. Every reason given by Judge CALHOON in his opinion in the *Simpson County case,* 81 Miss., 481, applies with full force to the question now before the court. It certainly is a matter of some consequence to the citizen and taxpayer whether or not his county shall be divided into two judicial districts; whether or not it shall incur the large additional expense which the maintenance of two court houses and two jails will impose upon him and the other taxpayers. Certainly the right to prevent a wrongful division of the county into two districts is just as sacred and just as much within the protection of the equity court as the right to prevent the wrongful removal of a county seat. See the authorities cited in the brief of counsel for appellee in the *Simpson County case,* as published in the report.

*Mayes & Longstreet,* and *E. M. Barber,* for appellees.

The demurrer to the bill and supplemental bill in the court below was correctly sustained, for the reason that the court had no jurisdiction to make the investigation prayed for by the bill, and no jurisdiction to render the decree demanded.

Counsel for the appellants in their brief say that: "This is not a proceeding to contest an election by injunction," but in

fact it is nothing else.   This seems obvious, on a little thought.
What is the primary and indispensable charge of the bill?   It
is that the managers at McHenry illegally and fraudulently
threw out and refused to count the votes cast at that place to
such an extent, and so fraudulently manipulated the same that
an adverse vote of thirty was returned as an adverse vote of
eleven, whereby the general result was attained by a favorable
vote of one, instead of an adverse vote of about eighteen.

It seems obvious that if the chancellor should undertake to
hear this matter further he is, by the averments of this bill,
called upon to canvass the McHenry votes.   Certainly he can-
not decide the case without the evidence; and if he undertakes
to go into any evidence, it is bound to be evidence in respect
to the right of the different alleged electors to cast the votes
offered by them, and the rightfulness of the action of the
managers at McHenry in rejecting such ballots as they did
reject, if, indeed, it shall turn out that they rejected any.

We repeat:   It is perfectly manifest that the court below
could not advance a peg with this case without making that
identical examination and review for the purpose of correct-
ing the decision on each vote made by the managers.

The effort is to resolve the chancery court into a canvassing
board of the McHenry votes; nothing more, nothing less; and
it cannot be successfully denied.

The foregoing is the only point made in the bill.   It is true
there is a subsidiary point made that when the election com-
missioners for the district made their report to the board of
supervisors, they did not with their report to the board of super-
visors, file the tickets, boxes, etc.   Without stopping to discuss
here the proposition that they were not required to do so under
the statute, we shall submit that there is nothing whatever in
the proposition unless it be assumed that the chancery court
is going to avail itself of the ballot boxes, etc., for the purpose

of ascertaining whether the action and return of the election commissioners was correct.

It is well settled that the question of the creation of a county, of the location of a county seat, of the subdivision of a county for a judicial and administrative purpose, is, in each instance, a politcal question, to be dealt with by the legislature at its discretion, and with plenary authority, and is not in any sense judicial, and not in any wise subject to the control of the court. 11 Cyc., pp. 343 to 345, and authorities cited.

In *Portwood* v. *Montgomery County,* 52 Miss., 523, this court said, speaking of the right of the legislature to create new counties and alter the boundaries of existing ones, that:

"The constitution enables the legislature to create new counties and alter the boundaries of existing ones. . . . Without an express grant of power in the constitution it would have been entirely competent for the legislature to form new counties and alter boundaries of others at its pleasure. The section in the constitution on this subject really has no other effect, practically, than to limit the legislative discretion as to the area of the new counties."

In *Simpson County* v. *Buckley,* 85 Miss., 713, this court said on p. 729, that: "Prior to the adoption of the constitution of 1890 the location and removal of county sites was a question submitted solely to legislative discretion and will."

In *Connor* v. *Gray,* 88 Miss., 489 (s.c. 41 South. Rep., 186), this court said again: "As was said in the case of *Humphreys* v. *Houston,* 4 Bax., 593, the creation of a new county is a legislative and not a judicial function."

So it is perfectly well settled that these are political questions to be determined by the legislature. This proposition is, of course, subject to modification, as all such propositions are, that the constitution may intervene; and the people, by the exercise of their sovereign power in that manner, may impose

certain restrictions upon the legislature, which restrictions must be observed.

Argued orally by *R. H. Thompson,* and *W. A. White,* for appellants, and by *Edward Mayes,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The bill in this case prays not only "that an injunction issue enjoining and restraining said defendants, constituting the board of supervisors, from entering an order declaring said election carried in favor of the division of the said county, or any order creating said second district, or from doing or performing any act with reference thereto," but further prays "that a mandatory injunction issue directing and requiring said defendants, election commissioners, to immediately file with the clerk of this honorable court the ballot boxes, tally sheets and tickets composing the returns of said election, that the truth of the allegations of this bill be inquired into by this honorable court, and that, upon final hearing, an order be made declaring said election carried against the division of said county, and perpetually enjoining the defendants from doing or performing any act toward the creation of said second district." It is perfectly obvious from the latter part of this prayer that the real purpose of this bill was to have the chancery court convert itself into a canvassing board for the purpose of canvassing the vote, declaring the result, and decreeing that the election had not been carried.

For reasons too obvious to state, it is manifest that the chancery court had no jurisdiction to entertain such a bill. The counting of the votes, the canvassing of the returns, and a declaration of the result were by the political department of the government—the legislature—expressly committed to the election commission and the board of supervisors; and there are many good reasons of a political nature why it was competent for the legislature, in the exercise of its plenary power in

that behalf, to so commit these matters to a special tribunal for determination, and that, too, without appeal. It is of the greatest public importance in such cases, that the declaration of the result in an election for the separation of a county into two districts should be speedily and finally determined, that the people may know what the result has been. These cases are political in their nature. *Conner* v. *Gray,* 88 Miss., 489 (s.c., 41 South. Rep., 186). See also *Gibbs* v. *McIntosh,* 78 Miss., 648 (29 South. Rep., 465). The case of *Simpson County* v. *Buckley,* 81 Miss., 474 (33 South. Rep., 650), turns on the provisions of the constitution of 1890, and involves the removal of the county seat, and was dealt with under sec. 259 of the constitution. The case of *Lindsley* v. *Coahoma County,* 69 Miss., 815 (11 South. Rep., 336), announces sound doctrine—a doctrine long established in this state.

The constitutional questions presented at the bar are not necessary to be considered by us, since the well-settled canon of constitutional construction is that constitutional questions will not be considered, except where they are absolutely necessary to decisions.          *Affirmed and bill dismissed.*