Syllabus.

## George A. McHenry et al. *v.* State of Mississippi.

### [44 South., 831.]

1. COURTS. *Judicial districts. Division of county. Elections. Canvass and return of votes.*

    The duty of canvassing the returns of an election held under Laws 1906, p. 185, c. 167, authorizing an election to divide a county into two court districts, is committed by the act to the board of election commissioners, and the board of supervisors of the county must declare the result as certified to by the election commissioners.

2. MANDAMUS. *Nature of remedy. Adequacy of other remedy.*

    Mandamus is an extraordinary writ, and ought not to be resorted to where the purpose sought to be accomplished by it can otherwise reasonably be accomplished.

3. SAME. *Orders. Authority of court. Evidence.*

    In mandamus to compel the board of supervisors of a county to meet and declare the result of an election held under Laws 1906, p. 185, ch. 167, authorizing an election to divide the county into court districts, no evidence except the report of the election commissioners required by the act to canvass the returns is admissible, since the board of supervisors can exercise no discretion, but must act ministerially in declaring the result as shown by the report of the commissioners, and the court is without power to grant an order to procure testimony of irregularities in the election.

4. SAME.

    Though the circuit court has jurisdiction generally to try a mandamus suit, it must try it according to its inherent nature as an extraordinary remedy limited in its scope.

5. CONTEMPT. *Disobedience of orders of court. Validity of orders.*

    An order made by the circuit court in mandamus in excess of its power is a nullity, and one disobeying it canot be punished for contempt.

6. SAME. *Inability to comply with order. Effect.*

    Where the chairman of election commissioners of a county, directed

by the court to file the ballot boxes, etc., showed that he was unable to comply with the order because of the destruction of the boxes, and that he had nothing to do with the destruction thereof, neither he nor his attorney, who advised that the court had no authority to make the order, could be adjudged guilty of contempt.

7. Same.

Where it is impossible for one without fault on his part to comply with an order of court, there is no contempt in disobedience of the order.

From the circuit court of Harrison county.

Hon. William H. Hardy, Judge.

The appellants, G. A. McHenry and E. M. Barber, having been adjudge guilty of contempt of court and sentenced to pay a fine and to be imprisoned in the county jail, appealed to the supreme court.

An election was held under ch. 167, p. 185, Laws 1906, providing for the submission to the voters of a designated part of Harrison county the question of a division of the county into two court districts. The election commissioners met and canvassed the returns of the election, and claimed that they had certified the returns to the board of supervisors. The board of supervisors failed to take any steps touching the subject-matter, and certain citizens of the county petitioned the circuit court for a writ of mandamus to compel the board of supervisors to meet and act upon the alleged report of the commissioners of election and consummate the establishment of the second court district of the county. The board of supervisors, without answering the petition, made a motion for an order of court directing the issuance of a subpœna *duces tecum* commanding McHenry, chairman of the election commission, to appear and deposit with the clerk of the court the ballot boxes, tally sheets and tickets comprising the returns of the special election in order that the board of supervisors might inspect the same and thereby be enabled to plead. The court

sustained the motion, over the objection of counsel for the petitioners, and ordered McHenry to produce the ballots and other data constituting the returns of the election. McHenry sought the advice of an attorney, Barber, who advised that the court was without authority to issue the order, and thereupon McHenry declined to produce the ballot boxes and returns. In response to an order directed from the circuit court to show cause why they should not be held in contempt of court, Barber answered that the court had no authority, under the facts alleged in the ·pleadings to force the appellant, McHenry, to produce the returns for the purpose of enabling the board of supervisors to plead in the mandamus suit. McHenry, answering separately, set up the same defense as Barber, and in addition alleged that the boxes and their contents had in his absence been stolen from his house where he had deposited them in a steel trunk for safety, and that it was impossible for him to produce the same. McHenry also testified to this effect on the hearing of the motion of the board to require him to produce the ballot boxes. The court adjudged McHenry guilty of contempt for refusing to comply with the order of the court, and adjudged Barber, the attorney, guilty of contempt for directing a witness to disobey the order of the court, and imposed a fine of $100 and a jail sentence on each; from which they appealed.

*Alexander & Alexander,* and *George B. Power,* for appellants.

This court held, in *Native Lumber Co.* v. *Harrison County Board of Supervisors,* 89 Miss., 171; 42 South., 665, that the duty of canvassing the votes in a county political election such as is here involved was committed exclusively to the board of election commissioners, and that the duty of declaring the result of the election was committed to the board of supervisors, and that there could be no appeal from the action of the board of election commissioners or of the board of super-

visors. Yet, in spite of such decision, this appeal is necessary
because the Harrison county board of supervisors has refused
to do what was requisite upon it under the above decision.

In the case cited, *Native Lumber Co.* v. *Harrison County
Board of Supervisors, supra,* this court held further that a
court of chancery had no jurisdiction to entertain a bill for an
injunction the purpose of which was to have the chancery
court convert itself into a canvassing board to canvass the
votes in a county political election and to decide whether a
county should be divided into two districts. Yet, now after
such decision, an attempt is made to have a court take upon
itself such prerogative, the difference being that now the circuit
court instead of the chancery court is looked to for such end,
and mandamus is sought to be employed. But mandamus is
an extraordinary remedy, and it is never within the province
of a court in a mandamus case to control the discretion of a
person or body. It may make such person or body act, but
it cannot direct how one shall act in a discretionary matter.
*Ex parte Rowland,* 104 U. S., 604; *Woodbury* v. *McClurg,*
78 Miss., 831.

In an action of mandamus the court cannot inquire into the
qualification of electors or the legality of an election as affected
by matters not apparent on the face of the returns. *State ex
rel.* v. *Board of Supervisors of Coahoma Co.,* 3 South., 143.

The board of supervisors' action upon the report of the board
of commissioners is purely ministerial. It is not constituted
a court for the purpose of trying whether the election was
properly held, or to try issues of fraud. If the board of super-
visors had such right, it would be a court, and mandamus
would not lie at all against it, but merely a writ of prohibition
in a proper case.

The purpose of the writ of mandamus was to compel the
production and examination of the ballot boxes and contents.
It should not, however, require any argument to show that

any order to this effect was beyond the powers of the circuit court in this action or in any kind of action.

There could be no contempt of court in the refusal to comply with the order of the court, when the order was illegal and invalid. 9 Cyc., 8. It has been held by the United States supreme court that where a court was without power to compel a party to an action to submit to an examination before trial the party could not be punished as for a contempt for refusing to submit to the examination. *Ex parte Fisk,* 113 U. S., 713. And in *Ex parte Ayres,* 123 U. S., 443, that court released one who had been imprisoned for contempt in refusing to comply with an order which the court had no authority to make. See also *Ex parte Terry,* 128 U. S., 305; *Hovey* v. *Elliott,* 145 N. Y., 143; 39 L. R. A., 463; *State* v. *Milligan,* 3 Wash. St., 152; *Ex parte Wimberly,* 57 Miss., 437.

How McHenry can be held for contempt is not apparent, inasmuch as he is shown to be free of fraud, and inasmuch as it was impossible for him to comply with the order. 9 Ency. Law & Proc., 13. And if McHenry cannot be held for contempt, then of course Barber, his attorney, could not be held liable for contempt in advising him as he did.

*E. M. Barber,* on the same side.

The circuit court had no more power to issue a subpœna *duces tecum* for the production of the ballot boxes, tally sheets and tickets used in the special election than the chancery court had; and this court has held, in *Native Lumber Company* v. *Harrison County Board of Supervisors,* 89 Miss., 171; 42 South., 665, that the chancery court had no jurisdiction whatever.

The Legislature had the power to put in operation a second court district in Harrison county, and could delegate such power to the people of the district for the purpose of voting thereon, and this the Legislature did, setting in motion the

machinery to bring about a vote on the question and to establish a tribunal to which the question should be referred for official decision. This tribunal consisted of the three election commissioners, appointed by the governor under Laws 1906, ch. 167. And their action was final. 73 Ga., 377; 34 Mich., 211; 101 Mich., 273; 67 Tex., 130; 68 Miss., 728; and 70 Miss., 733.

There could be no better case than *Ex parte Wimberly,* 57 Miss., 437, to guide an attorney in giving advice to the three election commissioners. With that case, and the others above cited, before me when advising the election commissioners, I felt then, and feel now, that my advice to the commissioners to the effect that the returns of the election were valueless after the commissioners had canvassed the returns and made their report, was correct.

While the circuit court had jurisdiction to try a mandamus, it had no power to order *subpœna duces tecum* to bring into court any document or other thing which could not be used as competent or relevant evidence on the trial of the case then before the court. My view was borne out by the circuit judge himself who stated in the order authorizing a *subpœna duces tecum* for the production of the ballot boxes and tally sheets and tickets, that it was done because the attorneys for the defense stated it to be necessary for them to inspect the ballot boxes, tally sheets and tickets so that they might the more intelligently plead in the case. It is thus apparent that the circuit court granted the order for the *subpœna duces tecum* for the purpose of assisting counsel for the defense to file such pleading as they might see fit, and not for the purpose of using the ballot boxes and tally sheets and tickets as evidence.

It is also to be noticed that there had not been any issue joined between the petitioners and the respondents in the mandamus proceedings before the order for *subpœna duces tecum* to any of the commissioners was issued.

I can see no difference in result between a mandatory in-

junction to produce ballot boxes, tally sheets and tickets and file them with the chancery court; and a *subpœna duces tecum* from the circuit court directing that the ballot boxes, tally sheets and tickets should be filed with the circuit court for inspection of counsel. And, as I have been supported by the chancery court and by this court as to the authority of the chancery court, in the case of *Native Lumber Co.* v. *Board of Supervisors of Harrison County, supra,* I feel no lack of confidence in the course pursued in advising my client relative to the *subpœna duces tecum* in the present case. However, it will be noticed that when I testified as to having given the election commissioners the advice not to produce the ballot boxes, tally sheets and tickets, before the court on the order made, I stated I had done so because I was under the impression that the three election commissioners were parties to this suit. On looking over the list of petitioners I found that none of the election commissioners appeared thereon; and, hence, as a matter of fact I did not advise the three parties upon whom *subpœna duces tecum* had been served, that they should not produce the boxes, tally sheets and tickets. But I had advised my own client to that effect. I would, however, have advised the three commissioners upon whom the subpœna had been served, had they consulted me, that, as the circuit court had no jurisdiction over the boxes, sheets and tickets, they need not obey the subpœna. For my authority as to such procedure, I refer the court to the authorities above cited, and also to *State of Missouri ex rel. St. Louis* v. *Railroad Co.,* 33 L. R. A., 341. See also *Ex parte Rowland,* 104 U. S., 604, where the United States supreme court lays down the rule that if the commands of a writ in whole or in part be beyond the power of the court the writ is void.

In *Commonwealth ex rel.* v. *Keeley,* 2 L. R. A., 223, it is held that the court has no jurisdiction to issue a *subpœna duces tecum* in any case until issue has been joined therein. In the case at bar no answer nor other defense had been filed

by defendants before the asking and granting of the subpœna. Hence, the court was without authority to issue the subpœna.

What is the office of a *subpœna duces tecum?* I find from the authorities that it can only be resorted to compel a party upon whom it is served to come into court and bring with him papers, books or documents, in his possession or under his control, which would be competent evidence on the trial of the cause on the issue. 24 Am. & Eng. Ency. Law, 437; *McDonald* v. *State,* 68 Miss., 728; *Conrad* v. *State,* 70 Miss., 733.

*R. V. Fletcher,* attorney-general, for appellee.

Learned counsel for appellants insist that the circuit court of Harrison county was without jurisdiction to make an order in this case, and especially without jurisdiction to make the particular order which the appellants have disobeyed. This conclusion is sought to be reached from a consideration of the decision of this court in *Native Lumber Co.* v. *Harrison County Board of Supervisors,* 89 Miss., 171. But the court's opinion in that case does not touch upon the question of whether the action of the special election commissioners is final and incapable of being reviewed by any court. It confines itself to a finding as to the jurisdiction of the chancery court to interfere in a political matter. Nor can support for appellant's position be found in the *Wimberly case,* 57 Mass., 437. In that case the contempt proceedings were set aside because the chancery court had no jurisdiction whatever to entertain the cause. But in the instant case, the jurisdiction of the circuit court to entertain the cause is undoubted, and indeed the jurisdiction is invoked by appellants themselves. The language of the *Wimberly case* on page 444 of the reported decision is conclusive against appellants as to the jurisdiction of the circuit court of Harrison county to make the order which was disregarded. For it is there announced that if the court has jurisdiction over the parties and over the subject-matter, then its

orders cannot be disregarded merely because the court may have erred in judgment or exceeded its authority. To hold otherwise would be to paralyze the machinery of the court. Every litigant or attorney would be at liberty to treat with contempt every order of the court, and no punishment could follow, if upon final hearing before the supreme court it should be held that the order ought not to have been made.

It is contended by appellants that the court cannot punish for contempt in this case because compliance with the order of the court was shown to be impossible. The court below however evidently believed that the appellant, McHenry, could, with little exertion, have produced the ballot boxes. And in any event there could have been a more complete showing by the recusant party to show that he had used diligent effort to comply with the court's order. But, under the advice of his counsel, he coolly states that he does not know where the boxes are, and does not propose to find out. Assuming that the circuit court had jurisdiction to make the order, it was the duty of the appellant, McHenry, to make an honest effort to comply.

That an attorney is in contempt of court for advising his client to disobey a lawful order of the court is too well settled to admit of argument. 7 Am. & Eng. Ency. Law (2 ed.), 44.

Argued orally by *E. M. Barber* and *C. H. Alexander,* for appellant, and by *R. V. Fletcher,* attorney-general, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

In the case of *Native Lumber Co.* v. *Board of Supervisors of Harrison County,* 89 Miss., 171; s.c., 42 South., 665, we held that the chancery court had no jurisdiction to entertain a bill for an injunction the obvious " purpose of which was to have the chancery court convert itself into a canvassing board for the purpose of canvassing the vote in an election and deciding

whether a county should be divided into two districts or not, and declaring the result, and decreeing that the election had not been carried." And we stressed the point in the opinion in that case that these matters were all political in their nature, and that the duty of canvassing the vote had been committed, exclusively, to the board of election commissioners, and the duty of declaring the result to the board of supervisors, whose duty it was to act from the face of the report as made to them by the commissioners, and that the very necessity of the case (it being essential that the result should be speedily known) required that there should be no appeal from the action of the board of election commissioners or of the board of supervisors. This decision, it would seem, ought to have been enough to have put a definite and final end to this litigation touching the question whether the voters of Harrison county had decided or not in favor of two districts in that county. But we are here very needlessly troubled with another branch of the same litigation. The board of supervisors of Harrison county, instead of doing as its plain duty required it to do, meeting and declaring the result of the election, in accordance with the report of the election commissioners, and proceeding to organize the new district for the county, has refused, it would seem, thus far, to do any part of its duty in the premises. The sole object of the bill in the case of *Native Lumber Co.* v. *Board of Supervisors, supra,* was to have the chancery court investigate the question whether the election had been carried, determining, in that investigation, the truth of various charges of gross fraud, etc., and decreeing that, because of these frauds, the election had not been carried. Practically that identical purpose is the one sought to be obtained by this mandamus proceeding in the circuit court. In other words, what we decided in the case of the *Native Lumber Co., supra,* could not be done by the chancery court, it is here attempted to have the circuit court do, in the exercise of its jurisdiction in a mandamus proceeding, notwithstanding, as pointed out above, we had declared that this

whole matter of canvassing the returns and declaring the result was purely political, and committed of necessity, since confidence must be ultimately reposed somewhere, to the board of election commissioners and the board of supervisors, each to do in that matter what we have above indicated.

This litigation was initiated by an application for a mandamus commanding the board of supervisors of Harrison county to meet and declare the result of the election and organize the new district. The declaration of the result of the election was a purely ministerial duty on the part of the board of supervisors. They had no discretion left to them in the matter. The board did not act as a court exercising judicial functions. It simply met to declare the result of the election, as certified to by the report of the election commissioners. It had nothing to do except to look to the face of that report and make the declaration of the result in accordance therewith. Mandamus is an extraordinary writ. It is not to be resorted to where the purpose sought to be accomplished by it can otherwise reasonably be accomplished. It moves along a very narrow groove of jurisdiction at best, and this particular mandamus suit here moves in perhaps as narrow a groove as any suit in mandamus could possibly move within. The whole scope of the writ in this case was, as stated, to command the board of supervisors to meet and declare the result of the election in accordance with the report of the election commissioners — a purely ministerial act requiring the exercise of no element of discretion. No testimony of any imaginable kind was needed in order to discharge promptly this ministerial duty, except the report of the election commissioners itself. There were no witnesses called. The board had nothing in the world to try. Their duty was instant obedience to the direction of the statute to meet and declare the result as stated. The statute committed to the election commissioners, and to that body exclusively, the canvassing of the returns of the election, and it committed just as exclusively to the board of supervisors the simple ministerial duty of declaring

the result in accordance with the report of the election commissioners. Time was of the very essence of the situation. The people needed to know, and to know promptly, how the election had gone. It never was the contemplation of the lawmakers that this sort of proceeding should get into the courts in the shape of a contest, and there drag its weary length along, it might be, through two or three years of litigation. The very nature of the case, the necessity of the situation, imperatively required that confidence and trust should be reposed in the integrity and honesty of the election commissioners in their discharge of their duties touching the canvassing of the election returns and the ascertaining of the result. A representative government must repose confidence in cases of this sort, and confidence without appeal, in some bodies of officials; and those bodies of officials, in this case, are the board of election commissioners as to its duties, and the board of supervisors as to its ministerial duty of declaring the result. In the case of *State ex rel.* v. *Board of Supervisors of Coahoma County*, 3 South., 143, s.c., post 582, a case which we hereby direct the state reporter to publish in the next volume of the Reports of this court (the case is reported next following this one) it was expressly held that, in a suit by mandamus, it was " not allowable to inquire into the qualifications of electors or the legality of the election as affected by matters not apparent on the face of the returns." Mandamus is not intended, at least not mandamus limited within the narrow groove of the mandamus in this particular case, to try issues, upon testimony at large, in the broad sense, at least, in which issues are so to be tried in ordinary suits. Having here, therefore, a mandamus in which no testimony of any kind whatever was receivable, except the report of the election commissioners itself, we are brought to inquire what power the court below had to make the particular order which it is complained was disobeyed in this case.

A mandamus having been applied for by a large number of citizens of the county, taxpayers thereof, against the board of

supervisors, to compel the performance of its purely ministerial duty, as above indicated, of declaring the result, the board of supervisors, without answering the petition for the mandamus, made the following motion in the case: " Come the defendants, by attorneys, and move the court for an order directing the clerk to issue a *subpœna duces tecum* to G. H. McHenry, commanding him to appear on the 27th day of May, 1907, and to file with the clerk the ballot boxes, tally sheets, and tickets comprising the returns of the special election held on September 24, 1906, in order that they may be inspected by defendant's counsel in order to enable them to plead." Acting upon this motion, the court ordered that " said *subpœna duces tecum* issue instanter, returnable May 27, 1907." This motion was not a motion for a *subpœna duces tecum,* nor did the order of the court direct anything except the issuance of " said " *subpœna duces tecum;* that is, one as prayed for, if one had been prayed for. McHenry was not directed to appear and testify. He was directed merely to carry the ballot boxes, tally sheets, etc., to the clerk of the circuit court, and leave them with the clerk of the circuit court, without any limit as to time, for the purpose of permitting the counsel for defendant to examine, at their leisure and without any restrictions of time whatever, the said ballot boxes, tally sheets, tickets, etc., in order, as stated, that after inspecting them they might be enabled to plead. It is perfectly obvious that the only possible object of inspecting these ballot boxes, etc., was to discover evidence upon which it might be shown to the circuit court, in the mandamus suit, that there had been fraud in the election, so as thereby to have the court refrain from commanding the declaration of the result in accordance with the statute. But no such effort was allowable in this mandamus proceeding. It was utterly foreign to the purpose of this particular mandamus suit to inquire, by testimony or by inspection of the ballots, into frauds and irregularities in the election. That matter had been disposed of finally by the election commissioners. It was not the business

of the chancery court by injunction, nor of the circuit court by mandamus, to make any inquiry into that matter, under this particular statute. Here, then, is an order which is not, in its nature, a *subpœna duces tecum,* and merely calling it a *subpœna duces tecum* cannot make it so. In substance and effect it was an order the object of which was to procure testimony for the purpose just stated, when no such testimony would have been receivable in the trial of the mandamus proceeding, nor could it, in any possible view, have been competent, and when, too, it was not an order commanding McHenry to appear and testify, bringing with him to the court the ballot boxes, etc., but an order directing him to deposit indefinitely with the clerk of the circuit court these ballot boxes, etc., for the inspection of the counsel for the defendant, that they, having inspected them, might plead. It is too plain for further comment that this order was not an order for the issuance of a *subpœna duces tecum.* We are compelled to hold that it was an order which the court had no power, in the trial of this particular mandamus suit, moving within its limited, narrow groove, to make. The circuit court undoubtedly has jurisdiction generally to try a mandamus proceeding; but a mandamus suit must be tried according to its inherent nature, as an extraordinary remedy, ever limited in its scope, and moving, as stated, generally within a very limited groove, and in this case within a very specially limited groove — the board having nothing to do but the purely ministerial duty of meeting and declaring the result.

It is a misconception to suppose that only in a case where the court has no jurisdiction over the particular suit can one safely disobey the order of a court. A court may have jurisdiction, in a general sense, of the particular suit, as regards both its subject-matter and the parties to it, and yet the court may make, in the trial of that particular case, an order which, regard being had to the nature of the suit, the court has no power whatever to make. Such an order is an absolute nullity, not a mere irregularity; and both where general jurisdiction at all

to entertain the particular cause is wanting, and also where, such general jurisdiction existing, the court, in the progress of the trial of the particular cause, makes an order wholly void, there is wanting utterly the predicate for any contempt process for disobedience to such order. This is essentially what is held in the case of *Ex parte Wimberly,* 57 Miss., 437, though in that particular case the court dealt with the instance of a court acting without jurisdiction at all in the cause, rather than the case of a court with general jurisdiction of a cause transcending entirely its power in the trial of that cause to make a particular order. In the case of *Hovey* v. *Elliott,* 145 N. Y., 126; 39 N. E., 841; 39 L. R. A., 449, this distinction is made very plain, both in the opinion and in the notes to the case. It is pointed out in the notes that the reason why one is not guilty of contempt in disobeying the order of the court, passing on an unconstitutional statute, is not that the court did not have jurisdiction to decide whether the act was constitutional or unconstitutional, but because an order, made in pursuance of an unconstitutional statute, is a mere nullity, a thing beyond the power of the court to make. The court, of course, has the jurisdiction, generally, both of the subject-matter and of the parties in every such case, and the right — which is what jurisdiction means — to hear and determine the constitutionality of the statute; but if, in so exercising this jurisdiction, if in so hearing and determining that question, it decides the act to be constitutional when it is unconstitutional, and makes an order in pursuance of such decision which one disobeys, he is not guilty of contempt, not because the court did not have jurisdiction to decide the question rightly or wrongly, but because the order is absolutely beyond the power of the court to make.

The court of appeals of New York, in the case of *Hovey* v. *Elliott,* cite with approval the following, which we also approve, from 12 Am. & Eng. Ency. of Law, 1470: " It is an axiom of the law that judgments entered without any jurisdiction are void, and will be so held in a collateral proceeding; and

there is a strong and growing tendency in all the courts to hold that, although a court had jurisdiction over both the person and the subject-matter, but did not have the jurisdiction to enter the particular judgment entered in the case, such judgment is void, and may be collaterally impeached." Perhaps the word " power " should be used in place of " jurisdiction " in the last clause of this sentence, to prevent confusion of thought. That court also cites with approval the following language of Justice FIELD in *Windsor* v. *McVeigh,* 93 U. S., 274; 23 L. Ed., 914: " The doctrine, invoked by counsel, that where a court has once acquired jurisdiction it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct as a general proposition, but, like all general propositions, is subject to many qualifications in its application. All courts, even the highest, are more or less limited in their jurisdiction. They are limited to particular classes of action, such as civil or criminal, or to particular modes of administering relief, such as legal or equitable. . . . Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is limited in its modes of procedure and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for libel, or personal tort, the court cannot order in the case a specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. Instances of this kind show that the general doctrine stated by counsel is subject to many qualifications. The judgments mentioned, given in the cases supposed, would not be merely erroneous. They would be absolutely void, because the court in rendering

91 Miss.—37

them would transcend the limits of its authority in those cases."
That court also cites with approval the following language from
Mr. Justice MILLER in *Ex parte Lange,* 18 Wall., 163; 21 L.
Ed., 872: "It is no answer to this to say that the court had
jurisdiction of the person of the prisoner and of the offense
under the statute. It by no means follows that these two facts
make valid, however erroneous it may be, any judgment the
court may render in such case. If a justice of the peace, having
jurisdiction to fine for a misdemeanor, and with the party
charged properly before him, should render a judgment that he
be hung, it would simply be void. Why void? Because he
had no power to render such a judgment. So, if a court of
general jurisdiction should, on an indictment for libel, render a
judgment of death or confiscation of property, it would, for
the same reason, be void; or if, on an indictment for treason,
the court should render a judgment of attaint, whereby the heirs
of the criminal could not inherit his property, which should,
by the judgment of the court be confiscated to the state, it would
be void as to the attainder, because in excess of the authority
of the court and forbidden by the Constitution. *Ex parte Fisk,*
113 U. S., 713–718; 5 Sup. Ct., 524; 28 L. Ed., 1117–1119;
*Re Bonner,* 151 U. S., 242; 14 Sup. Ct., 323; 38 L. Ed., 149;
*Re Mills,* 135 U. S., 263–270; 10 Sup. Ct., 762; 34 L. Ed.,
107–110; *Ex parte Terry,* 128 U. S., 289–304; 9 Sup. Ct., 77;
32 L. Ed., 405–408; *Ex parte Reed,* 100 U. S., 13–23; 25 L.
Ed., 538, 539; *Re Frederich,* 149 U. S., 70–76; 13 Sup. Ct.,
793; 37 L. Ed., 653–656; *Bigelow* v. *Forrest,* 9 Wall., 339; 19
L. Ed., 696. See, also, note entitled 'Want of Authority under
Jurisdiction Conferred,' in *Morrill* v. *Morrill,* 11 L. R. A.,
157; 20 Or., 96."

We do not think it possible to improve upon the clearness and
accuracy of these two statements by Mr. Justice FIELD and Mr.
Justice MILLER. In *Ex parte Rowland,* 104 U. S., 604; 26 L.
Ed., 861, the supreme court of the United States held that,
where the command of the writ of mandamus, in whole or in

part, was beyond the power of the court, the writ, or so much of it as was in excess of such power, was void, and that the court had no right, in law, to punish one for disobedience to such order. Of course, as stated in the *Wimberly case,* if the order is merely an "improvident" order, the party who disobeys it acts at his peril, and is guilty of contempt, and should be properly punished for such contempt; but, where the order is one that is not merely irregular or improvident, the court having power to make some order of the kind in the suit, but is an order which the court has no power at all to make in any case in the particular suit, then just as clearly as in the case of absolute want of jurisdiction to hear the case at all may one safely disobey such an order. We are informed, by the pleading and at the bar, that the learned judge below did ·not himself take the position that he had any power in this mandamus proceeding to try the question as to whether the election had been carried or not, but stated that he would do no such thing. He seems to have fallen into the misconception which led to the order by reason of the fact that counsel for the defendant deemed it necessary to their proper answer to the petition that they should for some reason inspect the ballots, etc., to enable them to plead. It is not at all an uncommon thing that a learned court should fall into error, where counsel as able as those representing the defendant in this case were themselves in error in the matter. The learned counsel honestly believing they had the right to the order, succeeded in convincing the court that an inspection of the ballots, etc., was necessary, not to try the contested election case, but to enable them to plead properly to the petition for the mandamus. We have shown this was a wholly erroneous view.

There is another view of this case leading to the same result. It appears that McHenry, the president of the election commissioners, after the commissioners had concluded their duties of canvassing the election returns and ascertaining the result, took the ballot boxes to his home, and there put them in a strong

steel trunk, locking the trunk securely. Afterwards he went to Europe in January, 1907, and whilst he was gone, according to the undisputed testimony in this case, the trunk was broken open and the ballot boxes were never seen or heard of thereafter. Each one of the election commissioners, except McHenry, swears positively that he never saw nor heard of the ballot boxes after they were delivered to McHenry the day after the election. *Mr. Barber,* their counsel, swears to the same thing with equal positiveness, and McHenry himself swears that he never saw nor heard of them after he left for Europe, and that he knows nothing about who broke into the trunk, who got the ballot boxes, or what disposition was made of them. There is not one scintilla of evidence in the record showing, or tending to show, any connivance on the part of any one of the election commissioners, or of their counsel, with the parties who broke into the trunk and stole these ballot boxes. No fraud is brought home to any one of the election commissioners, or to their counsel, in connection with this outrageous theft of the ballot boxes, etc., by the parties breaking into this steel trunk. No one of them is shown to have had anything to do, near or remote, with this theft. Not being shown by the testimony, therefore, to have had anything whatever to do with the destruction of the ballot boxes, and not knowing, according to the testimony of all, about where the ballot boxes, etc., are, or what has become of them, it was plainly a matter of impossibility for any one of them to have obeyed the command to carry the ballot boxes to the clerk of the circuit court and deposit them with him. It may have been bad judgment, it may have been an improper course of procedure, on the part of McHenry, to have taken these ballot boxes to his home and put them in a trunk there. That certainly was no proper repository for the ballot boxes of the county of Harrison; but to show simply that, and no more, in the face of the positive sworn denials in this case in connection with their subsequent loss or destruction, is not to show enough, in our judgment, to make any of these parties responsible for that

subsequent destruction of the ballot boxes. True, the ballot boxes could not have been taken from the trunk and destroyed unless they had been in the trunk. That is merely to say that their being there was a condition without which they could not have been destroyed; but it is very far from saying that these parties are responsible, in any proper or just sense, for such outrageous theft of the ballot boxes and the subsequent destruction thereof. In 9 Ency. of Law & Proc., at page 13, it is said: " Where it appears that it is, or was, impossible to comply with the order without fault on the part of the one charged, there is no contempt." We think it is perfectly clear, from the considerations which we have presented, that the order in this particular mandamus proceeding was one which the court had no power whatever to make, that it was consequently an absolute nullity, and that the parties were not guilty of contempt in disobeying such order, nor their counsel in advising its disobedience, and that, in addition to this, they could not have been so guilty of contempt for the further reason that the destruction of the ballot boxes made it impossible for them to have complied with the order, and there is an utter failure in the testimony to connect any of the appellants with such destruction of the ballot boxes, etc. We repeat that, in this opinion, we deal solely with the case made under this statute.

The judgment of the court below is consequently *reversed,* and the contempt proceedings *dismissed.*