McMILLIN, C.J., for the Court.
¶ 1. Mark Pope has appealed the ruling of the Chancery Court of Jackson County relating to several post-divorce matters litigated after his former wife, Jamie Pope, filed a petition to cite him for contempt and he filed a counterclaim seeking certain relief. Mr. Pope presents the following issues as to which he contends the chancellor erred:
(1) The chancellor erred in adjudicating him to be in contempt for nonpayment of alimony as ordered in the original judgment of divorce.
(2) The chancellor abused his discretion in resolving a dispute over whether Mr. Pope had complied with the divorce judgment’s provisions relating to the provision of health insurance to Mrs. Pope under the provisions of federal law commonly referred to as COBRA.
(3) The chancellor erred when he refused to end Mr. Pope’s alimony obligation after evidence was presented establishing that Mrs. Pope had entered into a cohabitation arrangement with another man that included the provision to her of regular financial support.
¶ 2. We find these issues to be without merit and affirm the chancellor.
I.
Contempt for Nonpayment of Alimony
¶ 3. The parties were divorced in March 1998, and a judgment- concerning their property and child custody was entered in April 1998. Under the terms of that judgment, Mr. Pope was ordered to pay his former wife the sum of $600 per month in alimony. He was further obligated to convey to Mrs. Pope his interest in the former marital dwelling in Pasca-goula and to “promptly pay and satisfy in full the outstanding balance on the existing mortgage or first deed of trust securing the debt on said property.”
¶ 4. Upon Mr. Pope’s failure to pay the periodic alimony payments, Mrs. Pope sought a contempt citation. Mr. Pope defended on the ground of impossibility, a defense to a contempt citation recognized in such cases as McHenry v. State, 91 Miss. 562, 581, 44 So. 831, 835 (1907), and Ewing v. Ewing, 749 So.2d 223, 225 (¶ 7) (Miss.Ct.App.1999). His evidence in support of his inability to make the payments consisted of two things. First, he testified that his existing home had suffered extensive flooding damage during Hurricane Georges that was not covered by insurance and that, as a result, his housing cost doubled from $400 to $800 per month. Secondly, he testified that his mother had been unable to repay certain funds due him that he had intended to use to meet his obligation to retire the mortgage debt on Mrs. Pope’s home and that, as a result, he was unable to pay that loan off in full as the parties had contemplated and was, instead, having to make the monthly mortgage payments on that loan.
*502 ¶ 5. There was evidence presented regarding Mr. Pope’s financial situation that showed his ability to meet the various obligations arising under the divorce decree, including the periodic alimony award, while still leaving approximately $1,200 in disposable income to meet his monthly living expenses. The chancellor concluded that this did not establish a defense of impossibility to perform that would serve to absolve Mr. Pope from a finding of contempt for his failure to meet his recurring alimony obligation. Based on the un-contradicted financial evidence, there is substantial evidence in the record to support that conclusion. In fact, the bulk of Mr. Pope’s argument on this point in his brief consists of attacks on the unfairness of the award because of the fact that Mrs. Pope has more disposable income than does Mr. Pope. While this type of analysis might legitimately support an action to prospectively modify the amount of alimony due based on a post-divorce material change in circumstance as to the financial condition of the divorcing parties, that is simply not the same thing as excusing payments that have already accrued that the evidence suggests could have been paid, albeit with possibly substantial financial hardship on the obligor. See, e.g., Hockaday v. Hockaday, 644 So.2d 446, 450 (Miss.1994).
¶ 6. It should be noted that, as a part of the ultimate decision in the case, the chancellor did, in fact, afford Mr. Pope some prospective relief based on changed circumstances by temporarily reducing his monthly alimony obligation from $600 to $500. We also note that, beyond reducing the prior accrued and unpaid alimony to judgment and setting up a seemingly-reasonable schedule for Mr. Pope to retire this arrearage, the chancellor did not impose any actual punishment for his alleged contempt. Even were we to conclude that Mr. Pope’s post-divorce financial reverses rendered him at least temporarily unable to meet his recurring alimony obligation such that his failure to pay was not wilful and thereby absolve him from a finding of contempt, that would not absolve him from continuing liability for the underlying debt which could nevertheless be reduced to judgment to await the day when financial resources might be available to satisfy the judgment. Wright v. Wright, 723 So.2d 1168, 1169 (¶ 4) (Miss.1998). Once these periodic obligations fell due and went unpaid, they took on the attributes of a final judgment in terms of civil liability and, thus, beyond the authority of the chancellor to alter. Gregg v. Montgomery, 587 So.2d 928, 933 (Miss.1991).
II.
Health Insurance under COBRA
¶ 7. Mr. Pope was ordered to provide health insurance coverage for Mrs. Pope for a period of thirty-six months following the divorce by obtaining such coverage through his health insurance coverage at his place of employment under the provisions of the federally-enacted Consolidated Omnibus Budget Reconciliation Act (COBRA). There is no dispute that Mrs. Pope had not been provided that coverage at the time of the hearing, and that the statutory time to convert Mrs. Pope’s prior family coverage under her husband’s policy to individual coverage pursuant to the provisions of COBRA had expired. Mrs. Pope alleged that she had been prejudiced by her former husband’s failure to provide that insurance by virtue of the fact that she had suffered an accidental injury for which she incurred substantial medical bills with no insurance to cover the expenses. The chancellor, after hearing extensive evidence on the matter, going both to issues of fact and the law pertaining to provision of such coverage, *503 determined that both Mr. Pope and Mrs. Pope bore some degree of fault in the failure to successfully convert the coverage within the time allowed by law. Specifically as to Mrs. Pope’s lack of diligence, there was evidence that Mr. Pope’s employer had furnished her a set of necessary forms to perfect COBRA coverage and that she had, for reasons the chancellor found unsatisfactory, failed to complete and return the forms as she had been instructed. Because of her lack of reasonable cooperation in completing the steps necessary to obtain the coverage, the chancellor declined to find Mr. Pope in contempt and declined Mrs. Pope any relief as to the medical bills she claimed would have been covered by COBRA insurance had the protection required under the divorce judgment been extended to her. Nevertheless, finding that Mr. Pope was not blameless in the situation, the chancellor elected to make an equitable adjustment in the judgment by requiring Mr. Pope to pay Mrs. Pope $197.61 per month for a period of thirty-six months, which is the amount shown by the evidence he would have had to pay for the COBRA coverage had it been obtained as required by the judgment.
¶ 8. Mr. Pope, citing such cases as Overstreet v. Overstreet, 692 So.2d 88 (Miss.1997), argues that this relief was inappropriate because it was not requested by Mrs. Pope. In the Overstreet case, the Mississippi Supreme Court set aside a chancellor’s decision to alter child support that occurred in a proceeding relating principally to disputes over alimony and the disposition of the former marital dwelling. Id. at 90-92. There had been no pleading filed in the proceeding seeking to increase child support. Id. at 92. In that case, the supreme court said that “a change such as this can only be made after a proper pleading and an opportunity to be heard.” Id.
¶ 9. We find this case distinguishable. There is no doubt that the issue of the competing rights and obligations of the parties under the divorce judgment provisions relating to COBRA were properly before the chancellor and the parties’ competing positions on the issue were vigorously asserted. In these circumstances, we do not think the chancellor is limited to granting only that relief prayed for by the movant. Rather, we find this case to be covered by the provisions of Mississippi Rule of Civil Procedure 54(c), which provides as follows:
Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled by the proof and which is within the jurisdiction of the court to grant, even if the party has not demanded such relief in his pleadings .... ”
M.R.C.P. 54(c).
¶ 10. In light of the broad discretionary powers granted to the chancellor to fashion appropriate relief in resolving the financial aspects of a dissolving marriage, we find that the pleadings were sufficient to fairly put the parties on notice that the chancellor would be asked to make an appropriate ruling on the parties’ competing rights and obligations concerning COBRA coverage for Mrs. Pope. We are also unconvinced that the relief actually granted to resolve the dispute, though not envisioned in advance by either party, was so inappropriate, based on the chancellor’s findings of fact, as to constitute an abuse of the broad discretion given the chancellor in such matters. Tillman v. Tillman, 716 So.2d 1090, 1094 (¶) (Miss.1998). There is, therefore, no reasoned basis to disturb the chancellor’s decision in this regard.
*504 III.
Termination of Alimony for Cohabitation
¶ 11. The proof in this regard by Mr. Pope, viewed in the light most favorable to his position, was that Mrs. Pope had become romantically involved with another man after the divorce and she had spent a number of weekends in his company, that the man had defrayed the expenses of these weekend encounters, that he had on five or six occasions stayed overnight in her home, and that he had helped her buy groceries on the occasions of his visits to Mrs. Pope’s residence. There was also proof that he had loaned her the sum of $4,000, but Mrs. Pope testified that this loan had been paid back. The chancellor concluded that this proof was insufficient to establish that Mrs. Pope had entered into a cohabitation arrangement that would relieve Mr. Pope of his obligation to continue to pay periodic alimony. Mr. Pope, dissatisfied with that determination, has appealed the decision to this Court, claiming that it was so against the weight of the evidence as to constitute an abuse of discretion. We do not agree.
¶ 12. The law on the subject in this State is that the alimony recipient must have entered into a cohabitation arrangement to the extent that it includes mutual financial support. Ellis v. Ellis, 651 So.2d 1068, 1072 (Miss.1995). The law is, in effect, that if the alimony recipient and another individual have so fashioned their relationship, to include their physical living arrangements and their financial affairs, that they could reasonably be considered as having entered into a de facto marriage, then the obligor may be relieved of his obligation to pay alimony the same as if his former spouse had entered into a de jure marriage. Scharwath v. Scharwath, 702 So.2d 1210, 1211 (¶ 6-7) (Miss.1997).
¶ 13. The chancellor’s findings of fact are entitled to substantial deference when reviewed on appeal. Magee v. Magee, 755 So.2d 1057, 1059 (¶ 8) (Miss.2000). It was the view of the chancellor that the relationship between Mrs. Pope and her new acquaintance, as that relationship was shown from the evidence (which the proof also showed had ended before the hearing), had never risen to the level that it could reasonably be said to constitute a de facto marriage relationship. Given the nature of the proof, we do not think the chancellor abused his discretion in so finding. We, therefore, affirm the chancellor on this part of his judgment.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, CHANDLER AND BRANTLEY, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.