Decided 22 December, 1902; rehearing denied 30 March. 1903.

## STATE ex rel. *v.* GRAY.

[70 Pac. 904, 71 Pac. 978.]

CONTEMPT—RIGHT OF APPEAL.

1. The sole and unreviewable right of a common law superior court of record to determine and punish a contempt does not prevail in Oregon, for, under section 676, B. & C. Comp., either party to a contempt proceeding may appeal from the final order therein.

CONTEMPT—VARIANCE BETWEEN AFFIDAVIT AND EVIDENCE.

2. Defendant having been enjoined from interfering with the flow of the water in a certain creek to the head of a designated ditch, and afterward charged with contempt of such decree by diverting the water of the creek before it reached the head of such ditch, which was further described in the affidavit of contempt as being upon the premises of relator, the court properly received evidence of a diversion from the designated ditch, although it was not situated on relators' premises. The variance between the affidavit of contempt and the evidence was immaterial, as the question was one of identity of the ditch named in the decree with the one interfered with, and the defendant was apprised by the decree what ditch was meant.

CONFLICT BETWEEN DECREE AND COURT'S OPINION.

3. Where the terms of a judgment or decree conflict with statements of fact in the opinion of the court, the decree is controlling, and error in such statements will not protect a party who disobeys the decree.

From Malheur: MORTON D. CLIFFORD, Judge.

Contempt proceedings by the State, on the relation of A. W. Turner against G. C. Gray. From a judgment adjudging defendant guilty of contempt, he appeals.          AFFIRMED.

For appellant there was a brief and oral argument by *Mr. Will R. King* and *Mr. Lionel R. Webster.*

For respondent there was a brief over the names of *William Miller,* District Attorney, *John L. Rand* and *R. G. Wheeler,* with an oral argument by *Mr. Rand.*

MR. CHIEF JUSTICE MOORE delivered the opinion.

This is a special proceeding for the punishment of an alleged contempt. The affidavit of the relator, A. W. Turner, is to the effect that, having instituted a suit in the Circuit Court of the State of Oregon for Malheur County against J. L. Cole, B. F. Kendall, and G. J. Gray, it was decreed on December 6, 1898, in pursuance of the mandate of this court (*Turner* v. *Cole,*

31 Or. 154, 49 Pac. 971), that he was the prior appropriator of the water of Willow Creek, and entitled, from April 1st to July 15th of each year, to 100 inches, and for the remainder of the time to 50 inches, thereof, to be measured at the head of what is known as the ''Imbler or Fence Ditch,'' and said defendants were enjoined from diverting the water of that stream in any manner so as to interfere with the quantity thereof awarded to him; that, notwithstanding said decree was still in force, Gray had, since July 15, 1901, knowingly and intentionally diverted the water of Willow Creek, and prevented the quantity thereof allowed him from flowing to the head of said ditch; and that, having frequently demanded of him the removal of the obstruction to the flow of the water to which he is entitled, and to permit the required quantity thereof to reach the head of said ditch, he had refused to comply therewith. Based upon this affidavit, and the motion of the district attorney therefor, an order was issued by the court requiring the defendant to appear before it at a time designated, and show cause, if any he had, why he should not be punished for contempt, which order having been personally served upon him, he appeared as required; and the court, after investigating the charge, found him guilty of the contempt as alleged, and, having fined him $50 and the costs and disbursements of the proceeding, he appeals from the judgment thus rendered.

It is contended by defendant's counsel that there was no evidence introduced at the hearing tending to show any violation of the terms of the decree, and hence the court erred in overruling their motion for a judgment of nonsuit. All the testimony taken is attached to, and made a part of, the bill of exceptions, a consideration of which shows that the defendant placed a dam in Willow Creek, and diverted the water thereof in such a manner as to prevent its flowing in a certain ditch extending from said creek through his land and that of the relator; and the principal inquiry is whether such diversion prevented the flow of water to the head of the ditch mentioned in the decree. At the hearing the relator introduced in evi-

dence a map upon which Willow Creek is represented as flow-ing through Gray's land, where it is tapped by a ditch con-structed on the easterly side of the creek. This stream also flows through the relator's land, joining Gray's on the east, where it is intersected by another ditch, constructed on the westerly side thereof. In *Turner* v. *Cole,* 31 Or. 154 (49 Pac. 971), Mr. Justice WOLVERTON, in speaking of the relator and these ditches, says: ''The plaintiff claims to have acquired his right by appropriation and use of the waters of Willow Creek, diverted therefrom by means of two ditches, which tap the creek, one upon each side, in the southeast quarter of section 10, township 16 south, range 43 east, in Malheur County. Willow Creek runs in a southeasterly course, and these ditches are so constructed that they encompass, upon the north, east, and west, the principal portion of plaintiff's lands.'' Further in the opinion, in referring to these artificial conduits, it is said: ''The ditches have been utilized as a means of construct-ing a fence, for drainage, and for irrigation, but there is much conflict in the testimony touching the real purpose for which they were originally constructed.'' This excerpt from the opinion is taken to determine, if possible, the location of the Imbler or fence ditch. It will be observed from the language quoted that these ditches were used as a means of turning stock. The statement thus made is supported by the testimony of N. Darnell, who, as a witness at the trial of the suit in which the opinion was rendered, said that there was a fence ditch on each side of the creek. The testimony taken at this examina-tion also shows that each of said trenches mentioned in the opinion was known as a ''fence ditch.'' The word ''fence,'' when used as a synonym for ''Imbler,'' and as qualifying the word ''ditch,'' adds no particular signification to the term, and for this reason may properly be rejected. Gray owns the S. W. ¼ of the N. W. ¼, the N. ½ of the S. W. ¼, and the S. W. ¼ of the S. W. ¼ of section 10 in township 16 south, range 43 east, of the Willamette Meridian; and Turner owns the S. E. ¼ of that section. It appears from the map intro-duced in evidence, and from the testimony given at the hear-

ing, that the ditch constructed on the easterly side of Willow Creek taps that stream in the S. W. 1/4 of the N. W. 1/4 of section 10, and that the ditch dug on the opposite side takes the water from the creek in the S. W. 1/4 of the S. E. 1/4 of said section, about a mile below the head of the upper ditch. It will be remembered that the opinion quoted from states that both ditches tap the creek in the S. E. 1/4 of section 10.

The transcript of that case does not now contain any map of the premises, and it may have been, as is sometimes the case, in the absence of a plat of the *locus in quo,* that counsel at the trial sketched a general outline of the stream, ditches, and land, or it is possible that such statement was based upon the testimony of witnesses whose attention was not particularly called to the matter; but, however this may be, we think the opinion incorrectly located the head of the upper ditch, which taps the stream in the N. W. 1/4 of section 10, and on Gray's land, at the point indicated on the map. If the lower means of diverting the water be known as the "Imbler Ditch," the defendant, as we understand, may, from his obstruction of the stream above the head of the upper ditch, divert the water on the southerly side of the creek, use it in irrigating his premises, and return the required quantity at the head of the lower ditch; thereby depriving Turner of the use of the water to irrigate his land, which lies on the easterly side of the stream. If, however, the lower ditch be the one specified, no disobedience of the decree has occurred; but, if the upper conduit be known as the "Imbler ditch," it follows that the defendant is guilty as charged. It is impossible to reconcile the conflict in the testimony in respect to the identity of the ditch mentioned in the decree; the defendant and several of his witnesses stating that they had never heard the upper ditch called by that name until after the decree was rendered, and that the ditch specified in the decree taps Willow Creek on Turner's land. J. L. Cole, appearing as defendant's witness, testified that the lower ditch was constructed by a Mr. Price as a means of turning stock, and called the "Price or Fence Ditch," but, the premises across which it was dug having been sold to Imbler,

the ditch was thereafter generally known by the name of the latter. Turner, however, testified that the ditch on the east side of the creek, which tapped the stream on Gray's land, was known as the "Imbler Ditch," and that the lower ditch was dug by Price, Kimball, and himself, but had not been used for ten or twelve years. Frank Start testified that for seventeen years he had known the upper ditch, which was constructed by one Crocker, and now known as the "Imbler Ditch." We have examined the testimony given at the trial of the suit in which the decree alleged to have been violated was rendered, and find that Turner, the relator herein, as a witness in his own behalf, testified that nearly all his land was irrigated by water from the Imbler Ditch. At that time no controversy existed in relation to the ditches, the question at issue in the suit being the prior right of appropriation; and from Turner's testimony, given at that trial, the name of the ditch, as stated by him, may have been incorporated in the decree as a means of identifying the particular one, at the head of which the water awarded him was to be measured.

1. At the common law a superior court of record was the sole judge of contempts committed against its authority and dignity, and its judgments inflicting punishment upon contemners were not reviewable by writ of error: Rapalje, Contempt, § 141. In this state, however, the statute confers upon either party the right of appeal from a judgment of contempt, to be taken in like manner and with like effect as from a judgment in an action: B. & C. Comp. § 676. If it be assumed that upon a motion for a judgment of nonsuit the testimony given at the trial is to be considered in this court, as in the court below, we are satisfied that the preponderance is on the side of relator's contention that the Imbler Ditch taps Willow Creek on the defendant's land, and that he obstructed the flow of the water therein in such a manner as to prevent its reaching the head of said ditch.

Other errors are assigned, but, deeming them unimportant, the judgment is affirmed.                            AFFIRMED.

Decided 30 March, 1903.

ON PETITION FOR REHEARING.

MR. CHIEF JUSTICE MOORE delivered the opinion.

2. It is contended by defendant's counsel, in their petition for a rehearing, that the affidavit which formed the basis of this proceeding located the head of the Imbler Ditch upon the relator's land, and that the court, over their objection, permitted testimony to be introduced tending to show that defendant prevented water from flowing into a ditch the head of which was on his own premises, and, having been found guilty of contempt upon such testimony, the judgment should be reversed because of the variance. The decree, for the violation of which the defendant was found guilty, is, so far as considered important herein, as follows:

"It is therefore considered, ordered, adjudged, and decreed that the plaintiff and respondent, A. W. Turner, has a prior right of appropriation to one hundred inches of water from Willow Creek, under a six-inch pressure, to be measured at the head of the ditch known as the 'Imbler' or 'Fence' ditch, from the 1st day of April to the 15th day of July in each year, and fifty inches of water, to be measured at the same point under like pressure, for the remainder of the year, and that the said defendants and appellants, J. L. Cole, G. J. Gray and B. F. Kendall, and each of them, and all persons acting through or under them, their servants, agents, and employes, be and they are hereby perpetually enjoined from making any diversion of any water from Willow Creek which will in anywise conflict with the allowance made to the respondent, A. W. Turner, as above set forth."

The part of the affidavit adverted to applicable to the question involved is as follows:

"I, A. W. Turner, being first duly sworn, depose and say that on the 6th day of December, 1898, in the Circuit Court of the State of Oregon for Baker County, in a suit pending wherein A. W. Turner was plaintiff, and G. J. Gray and J. L. Cole and B. F. Kendall were defendants, a decree was entered by the above-entitled court, in pursuance of the mandate of the Supreme Court of the State of Oregon, wherein and whereby it was ordered and adjudged that the said A. W. Turner was the appropriator and owner of a prior right of appropriation

of 100 inches of water from Willow Creek, by miners' measurement, under a six-inch pressure, to be measured upon the premises of said A. W. Turner, at the head of that certain ditch known as the 'Imbler Ditch.' ''

It is then stated that said decree is in full force, and that, at the time it was rendered, defendant was and now is the owner of certain real property situated upon Willow Creek, and also the owner of a ditch tapping that stream, and that since the decree was rendered he has, in violation thereof, intentionally diverted the water from flowing in the channel of the creek to the head of the Imbler Ditch. We think this affidavit sufficiently charges the defendant with a wilful violation of the terms of the decree, to which he was a party, and particularly specifies the manner of the infringement thereof, which consists in diverting the water from Willow Creek, and in preventing any of it from flowing in the channel of that stream to the head of the Imbler Ditch.

It is true that the relator's affidavit states that the water is to be measured upon the premises of said A. W. Turner at the head of that certain ditch known as the ''Imbler Ditch.'' If the theory adopted by the relator at the trial of this proceeding be true, the head of the Imbler Ditch is not located upon his land, but upon the defendant's premises, while the defendant's theory is that the head of said ditch is correctly stated in said affidavit. The question involved was the identity of the ditch specified in the decree, and, when that issue was determined, the head of the Imbler Ditch would necessarily be located at the point where the ditch tapped Willow Creek, regardless of whose land it might be situated upon. The implication in the relator's affidavit that the head of the ditch in controversy is situated upon his premises is a circumstance tending to defeat his theory and to support that of the defendant; but we do not think such circumstance is controlling, or that the court erred in admitting testimony tending to show that the head of said ditch was on the defendant's premises, he having been sufficiently notified of the issue involved by the statement that he had violated the provisions of the injunction

by preventing the water of Willow Creek from flowing in the channel thereof to the head of the Imbler Ditch.

3. It is insisted that the opinion handed down by this court in the case in which the decree alleged to have been violated was given (*Turner* v. *Cole,* 31 Or. 154, 49 Pac. 971), having described the head of the Imbler Ditch as being in the place stated in the affidavit, and at the trial of this proceeding the relator, upon cross-examination, having admitted the same fact, an error was committed by the trial court in concluding that the head of said ditch was located at any other place than as so stated and proven; and that notwithstanding the defendant relied upon the statement contained in said opinion, and observed the order of the court in respect thereto, he was adjudged guilty of contempt under a modification of the language of the opinion, which change was effectuated after the commission of the acts complained of, in the absence of a criminal intent, and without notice that said opinion would be modified. In the opinion, to which attention is called, the statement is made that Turner, the relator, possessed two ditches that tapped Willow Creek in the southeast quarter of section 10, township 16 south, range 43 east, in Malheur County.

The judgment or decree is the declaration of the law applicable to the facts upon the issue involved, and, when the court rendering it has jurisdiction of the subject-matter and of the parties, it is binding upon them until modified or set aside in the manner prescribed for that purpose. An opinion is a written statement by the court of its reasons for the conclusion reached from an examination of the law and of the facts in controversy: *Houston* v. *Williams,* 13 Cal. 24 (73 Am. Dec. 565). The opinion forms no part of the judgment, though it may with propriety be consulted to explain an ambiguity therein: *Keane* v. *Fisher,* 10 La. Ann. 261. An examination of the decree in the case at bar shows that the Imbler Ditch is also called the "Fence" ditch. This designation in favor of the relator's understanding of the names of these ditches would seem to render the decree ambiguous, thereby permit-

ting an examination of the opinion with a view to resolving the doubt, if possible, but, when this cannot be done by a resort to that means, the judgment or decree, when conflicting with the opinion, must prevail, as that is the last expression of the court upon the matter. It may be that the decree improperly specified the ditch in controversy, but, even if that be so, it is binding upon the court and the parties thereto until modified, so that the mere inaccuracy of statement in the opinion furnishes no justification for the intentional diversion of the water of Willow Creek, and thus preventing its flow to the head of the Imbler Ditch, which a re-examination of the testimony convinces us has been done by defendant in violation of such decree.

The attention of the relator, A. W. Turner, having been called to the time he sold a certain farm, he was asked, on cross-examination, "Before that, the Imbler Ditch, the head of it, was about 300 yards below the Gray line?" to which he replied, "Yes, sir; the Fence Ditch. Q. I mean the ditch on the south side of Willow Creek. Before 1886 or 1887, where was the head of the Imbler Ditch? A. It was up in Mr. Gray's field." Further, in his cross-examination, the attention of the witness having been attracted to the testimony which he had given in the suit resulting in the decree alleged to have been violated, he was asked: " 'Before that, where was the head of the Imbler ditch?' and you answered, 'About three or four hundred yards below Gray's line.' Did you say that? to which he replied: "If I did, I understood it to be the Price Ditch; not the east ditch as now. One heads above, the other below. That is the one I had reference to when the question was asked, on the south side of the creek." This witness having been recalled for further cross-examination, the following question was asked him: "You were a witness in the case in which you were plaintiff, and Gray and others were defendants, in which this decree was rendered?" to which he answered: "Yes, sir. Q. Do you remember this Fence Ditch on the south side of the creek? A. That's what it has always been called." The testimony of the relator would seem to indi-

cate that he understood the ditch constructed on the south side of the creek to be the Price or Fence Ditch, and the one on the north side, the head of which was on Gray's land, to be the Imbler ditch. Though such was the relator's understanding in respect to the names of these ditches, other witnesses designated the Imbler Ditch as the "Fence" Ditch, and it is certain that both these ditches were used as a means of turning stock. We do not think a careful perusal of Turner's testimony would lead to the conclusion that he ever admitted that the head of the Imbler Ditch was located on his land.

Believing, as we do, that the preponderance of the testimony shows that defendant wilfully violated the terms of the decree, the petition for rehearing is denied.

REHEARING DENIED.