Argued March 31, modified April 27, objection to cost bill overruled June 1, 1915.

# HENDERSON *v.* TILLAMOOK HOTEL CO.

### (148 Pac. 57; 149 Pac. 473.)

#### Appeal and Error—Review—Equity Cases.

1.   An equity suit is triable *de novo* on appeal; and hence the disqualification of the trial judge will not prevent the appellate court from reviewing the case.

#### Judges—Disqualification—Interest.

2.   Where, two days before commencement of the suit, the trial judge sold his stock in the defendant corporation to plaintiff, he was not technically disqualified by interest, within Section 956, L. O. L; but it would be preferable for him not to hear the case.

#### Injunction—Bonds—Necessity.

3.   Under Section 417, L. O. L., providing that before allowing an injunction the court shall require of plaintiff an undertaking with sureties, an injunction should not be granted on the court's own motion, unless plaintiff gives the required undertaking.

#### Corporations—Receivers—Appointment—Right to.

4.   Though accountants appointed to audit books of a corporation were agreed to by the defendant officers, the wrongful refusal of such officers to compensate them is no ground for appointment of a receiver of the corporation.

> [As to grounds for appointment of receiver, see notes in 64 Am. Dec. 482; 72 Am. St. Rep. 29.]

#### Corporations—Receivers—Appointment—Grounds.

5.   Where the patronage of an hotel had been practically the same since it started in business, the directors and managers should not be removed and a receiver appointed, even though the conduct of the president, who was in active charge of the business, had been open to criticism on account of his intoxication; it not appearing that the corporation was in immediate danger of insolvency, or that the president was falsifying or failing to keep records of its business.

#### Corporations—Use of Corporate Property—Power of President.

6.   The president and manager of an hotel corporation should not use the liquor of the company or its funds in treating himself, guests and others, though he justified it on the ground of advertising.

#### Costs—Costs on Appeal—Suits in Equity—Transcript.

7.   The Supreme Court will tax as a disbursement the necessary expense incurred for a transcript of the testimony in a suit in equity, when such transcript is prepared for the appeal, and after a decision by the trial court.

From Tillamook: WEBSTER HOLMES, Judge.

Department 2.    Statement by MR. JUSTICE HARRIS.

This is a suit by John Leland Henderson against the Tillamook Hotel Company, P. J. Worrall, Anna A. Worrall and Charles Kunze.

The real purpose of this suit, which was commenced January 16, 1914, is to oust P. J. Worrall from the management of an hotel owned by the Tillamook Hotel Company, a corporation, which was organized for the purpose of building the hotel. The capital stock aggregated $33,000, divided into 330 shares of the par value of $100 per share, of which $32,500 is subscribed and paid for. The defendants P. J. Worrall and Anna A. Worrall are husband and wife, the former owning 86 shares and the latter 85 shares of the capital stock. The defendant Charles Kunze owns 10 shares and the plaintiff has one share of the capital stock. At the time of the commencement of the suit the defendants P. J. Worrall, Anna A. Worrall and Charles Kunze constituted the board of directors of the Tillamook Hotel Company. The officers of the company are P. J. Worrall, president; Anna A. Worrall, vice-president; N. W. Harrison, treasurer, and Hazel Worrall, a daughter of P. J. Worrall, secretary. The by-laws of the corporation designate the president as general manager, and authorize him to transact all of the business of the company, to buy supplies and materials, to employ help and labor, and generally to conduct the business of the company. The ground and building cost about $39,500, and the additional sum of about $10,000 was expended for furnishings. The hotel was opened to the public July 19, 1913, under the management of the officers mentioned. The amended complaint alleges and the answer admits that the directors voted salaries to be paid as follows: To P. J. Worrall,

as president and manager, $100 per month; to Anna A. Worrall, as housekeeper, $35 per month; and to Hazel Worrall, as secretary, $25 per month. The stock subscriptions not being sufficient to complete and equip the building, the directors borrowed $10,000 from the Equitable Loan & Savings Association, which sum is agreed to be repaid in monthly installments of $216.40. P. J. Worrall and Anna A. Worrall also loaned the company the sum of $6,500, and the corporation owes the further sum of about $4,000.

The grievances of the plaintiff, as we find them narrated in the amended complaint, are, in substance, that P. J. Worrall has been habitually in a condition of gross intoxication; that he has been guilty of boisterous and brawling conduct in and about the hotel; that he has frequently used loud and abusive language, regardless of the presence of guests of the hotel; that on one occasion, and without cause, he cursed and abused the plaintiff, who was at the time a guest of the hotel; that he has engaged in altercations and personal encounters with designated persons in and about the hotel; that by reason of such conduct Worrall has acquired the reputation of being a dangerous, quarrelsome and disagreeable man, and on account thereof the hotel has acquired the reputation of being an undesirable place for the traveling public to patronize, in consequence of all of which the business has been permanently impaired, to the financial loss and injury of the stockholders. The amended complaint further charges that on account of the incompetence of Worrall and his gross mismanagement the business is being operated at a loss of $300 per month, but that the hotel could be conducted at a profit if properly managed. The plaintiff asserts that the property could be leased for probably $400 per month, which would afford a

reasonable return to the stockholders, but the defendant P. J. Worrall refuses to lease the hotel, except for the exorbitant rental of $600 per month; that P. J. Worrall fails to keep books of account correctly showing the business of the company; that he has converted to his own use both money and property of the company, and especially large quantities of liquor; that by reason of his gross mismanagement the stock has so depreciated that it cannot be sold for 30 cents on the dollar, and that it will become further depreciated if the present management is continued; that Anna A. Worrall is dominated by P. J. Worrall, so that for all practical purposes the management is vested in P. J. Worrall. The plaintiff also charges that the defendant P. J. Worrall intends to render the company insolvent, thereby enabling him to purchase the stock for only a fractional part of the par value thereof; that it is impossible to know the exact condition of the affairs of the company because of the manner in which the books have been kept; that the company is either insolvent or in immediate danger of insolvency. The amended complaint concludes with a prayer that a receiver be appointed for the property and business of the company; that during the pendency of the suit and until the further order of the court the defendants be enjoined from in any way transacting any business as directors of the company; that defendants be required to account for all property and funds received by them, and to pay the same to a receiver to be appointed by the court; that, if necessary to do equity, the whole of the property be sold, and the proceeds paid to the creditors and the stockholders.

The defendants deny the charge of mismanagement, and affirmatively allege that from the time that the hotel was opened until December, 1913, the business

was conducted at a profit, except during the months of December and January, when there was a loss; that the plaintiff, who is not financially responsible, has conspired with certain minority stockholders to deprive the Worralls of the money invested by the latter, and in furtherance of such conspiracy instituted this suit.

The court without any bond being given, and upon the *ex parte* application of plaintiff, issued a restraining order on January 16, 1914, enjoining the defendants from encumbering the property or incurring any indebtedness, or in any way acting for it, except to keep the hotel open for business, and directed defendants to appear on January 20th and show cause why such order should not be ·continued during the pendency of the suit.

On January 22, 1914, the defendants were enjoined from in any manner encumbering any of the property and from creating any indebtedness without the leave of the court; from appropriating or using any of the property, except board and lodging for P. J. Worrall, Anna A. Worrall and Hazel Worrall. The court directed P. J. Worrall to render an accounting of all moneys received, and enjoined the defendants from drawing any salary until the further order of the court.

On January 22, 1914, the court appointed A. H. Gaylord and C. J. Carlton accountants to expert the books, fixed their compensation at $7.50 per day, ordered Gaylord upon completion of the work to continue to keep the book accounts, his compensation to be fixed thereafter; and on January 27th the court made a further order commanding the defendants to pay Gaylord and Carlton for services rendered pursuant to the order of January 22d, and, if sufficient funds were not on hand,

then defendants were authorized to borrow money to make the payment.

The defendants on February 7, 1914, filed a motion to dissolve the restraining orders, for the reason that plaintiff had not filed an undertaking as required by law, and thereafter on February 10th, the court directed the plaintiff to file an undertaking in the sum of $500.

The next order was made on May 1, 1914, at which time the court peremptorily directed the defendants to pay Gaylord and Carlton for their services as accountants. Thereafter, on May 5th, after reciting that the application of plaintiff for a receiver made January 22d was continued from day to day, that by agreement of all the parties the court appointed Gaylord and Carlton as accountants to expert the books at the rate of $7.50 per day, which compensation was agreed upon by all the parties and their counsel in open court, that defendants failed to pay the accountants as ordered, that P. J. Worrall is not a suitable person to be in control of the property, and ignores the orders of the court, an order was made appointing A. H. Gaylord receiver, with authority to take immediate and exclusive possession of the hotel property and business, and manage the same according to the orders of the court, and to pay the claims of Gaylord and Carlton. The last-mentioned order permitted the individual defendants to remain in the hotel as guests, but enjoined them from interfering with the management of the business.

The defendants having refused to surrender possession to Gaylord, the court, on May 5th, made an additional order directing the sheriff to place Gaylord in possession; and on the following day, upon application of the receiver, the court ordered that P. J. Worrall

and Anna A. Worrall be not permitted to remain in the hotel as guests or otherwise, and the sheriff was directed to eject them. The suit resulted in a decree whereby the individual defendants are enjoined from managing the affairs of the company and from drawing or claiming salaries since May 5, 1914; A. H. Gaylord was appointed receiver to operate the business and to take the necessary steps to procure sufficient funds to pay the running expenses, as well as all other indebtedness, and to borrow money for that purpose; and the company was awarded judgment for $559 against P. J. Worrall on account of liquors consumed. The defendants appeal.                              MODIFIED.

For appellants there was a brief over the names of *Mr. Ralph R. Duniway* and *Mr. E. J. Claussen,* with an oral argument by *Mr. Duniway.*

For respondent there was a brief over the names of *Mr. H. T. Botts, Mr. George R. Bagley* and *Mr. Edmund B. Tongue,* with an oral argument by *Mr. Botts.*

MR. JUSTICE HARRIS delivered the opinion of the court.

It is claimed that the circuit judge was disqualified, and that he should have declined to preside at the trial. In support of their contention the defendants point to the fact that on January 22, 1914, they filed a motion to secure a ruling on the alleged disqualification of the presiding judge; the motion being accompanied by affidavits to the effect that he was a party in interest. It appears from the record that the trial judge had subscribed for one share of the capital stock of the defendant corporation; that his subscription had not been fully paid; and that on January 14, 1914, two

76 Or.—25

days before the commencement of the suit, he sold all his interest in the stock subscription to the plaintiff, Henderson, who on January 21st following paid to the company the balance due on the subscription.

1. Being a suit in equity, this cause is tried *de novo* in this court on the entire record as made by the parties in the *nisi prius* court. The litigated questions are decided here on the facts as we learn them from the evidence and the admissions made in the pleadings. The question of the alleged disqualification of the circuit judge is neither a persuasive nor a determinative factor in the conclusion to be reached by this court on the merits of the dispute between the plaintiff and the defendants. The appellate tribunal is not prevented from deciding this cause on the record brought here, even though it be conceded that the circuit judge was disqualified.

2. While the objection raised by the defendants is not an element of the case calling for decision here, we note, however, in passing, that although a technical disqualification was not shown to exist within the contemplation of Section 956, L. O. L., because all right to the share of stock subscribed for had passed to the hands of another person, who had paid the balance due on the stock subscription at the time of filing the motion, nevertheless, under the circumstances, it would have been more in keeping with prudence and a fine sense of impartiality if the presiding judge had declined to try the suit.

3. The defendants complain because an injunction was issued without an undertaking being given or required. Neither the restraining order made on January 16, 1914, nor the one issued on January 22d provided for the giving of an undertaking, and none was required until February 10th. Even though the re-

straining order was made by the judge, upon his own motion, as stated in the order dated February 10, 1914, nevertheless the statute required the giving of an undertaking. We read in Section 417, L. O. L., that:

"An injunction may be allowed by the court, or judge thereof, at any time after the commencement of the suit and before decree. Before allowing the same, the court or judge shall require of the plaintiff an undertaking, with one or more sureties."

The terms of the statute are imperative, and command the court or judge to require an undertaking before allowing an injunction *pendente lite.*

4. The appointment of a receiver made by the court on May 5, 1914, is questioned by defendants. The record discloses that on January 17, 1914, the plaintiff filed a motion for the appointment of a receiver. The motion and the accompanying affidavits were served on the individual defendants on January 17th, together with a notice that the motion would be presented on January 20th. From all that appears in the record the application for a receiver was not presented on the date designated, and the next step seems to have been taken on January 22d, when defendants filed affidavits in support of their claim that the presiding judge was disqualified. A restraining order was issued, and the accountants were appointed on January 22d. On January 27th an order was made directing the defendants to pay the accountants, and, if need be, to borrow money to make such payments. The defendants on February 7th moved to dissolve the restraining orders, and thereafter, on February 10th, the plaintiff was directed to file an undertaking in the sum of $500 on account of the issuance of the injunction. Not having paid the accountants, an order was made by the court on May 1st, commanding the defend-

ants forthwith to procure funds by loan or otherwise and deposit the same with the clerk of the court for the use and benefit of the accountants. The defendants having refused to comply with the last-mentioned order, the court, on May 5th, appointed a receiver. It clearly appears from all that transpired and from the recitals contained in the different orders that the appointment was prompted by the refusal of the defendants to pay the accountants, and that this was the controlling feature causing the appointment. The affairs of the Tillamook Hotel Company on May 5th were not in a worse condition than on January 22d. The refusal of the defendants to pay the accountants in obedience to the orders of the court did not furnish ground for a receivership. Under all the circumstances, as we read the history of the litigation, a receiver should not have been appointed. It is proper to add, however, that from a careful examination of the record we find that the appointment of the accountants was made under conditions which warrant the conclusion that both plaintiff and defendants sanctioned the selection of the accountants and approved the amount of the compensation fixed by the court; and, in view of the circumstances stated, the corporation should have paid Gaylord and Carlton.

5. The main grievance of plaintiff is that P. J. Worrall, by reason of his conduct, has acquired the reputation of being a quarrelsome, dangerous and disagreeable man, and, on account thereof, the hotel lost much patronage. We gather from the evidence that the hotel in question is better furnished and equipped than any other one in Tillamook. If any loss of patronage could properly be traced to Worrall, at least some information would be afforded by the hotel register. The company commenced business July 18, 1913, and the

number of guests registering during that month was
142, and during the subsequent months as follows:
August, 815; September, 377; October, 382; November,
444; December, 320; January, 90; February, 298;
March, 363; April, 357; and the first four days in May,
35.   Nearly all the persons who registered were as-
signed rooms, but some guests took meals only.   It
will be observed that, with the exception of August and
January, the patronage was practically the same.
The business done in January is accounted for by the
fact that the train service was tied up nearly all of
that month.   No doubt, Worrall's conduct, which was
not at all times exemplary, gave rise to some discus-
sion, but the conditions are not sufficiently grave to
warrant the court in removing him from the manage-
ment of the business, especially in view of the fact that
Worrall and his wife have invested $17,100 of their
money in the property, and have loaned the corpora-
tion the additional sum of $6,500.   The evidence does
not warrant the claim that P. J. Worrall is seeking by
fraudulent or other means to depreciate the value of
the stock.   Although books of account were not kept
with as much care and completeness as might be de-
sired, still the plan employed afforded means of know-
ing how much was received from the dining-room, the
rooms and the bar; and the disbursements were evi-
denced by checks.

The final decree, in effect, removed the directors and
officers of the corporation, and placed the management
in the hands of a person selected by the court.   As-
suming that a court of equity does have the power to
remove the officers of a corporation and substitute a
managing receiver, or even to decree the dissolution
of the corporation, nevertheless it is a well-settled rule
that such court will proceed with extreme caution in

the appointment of receivers over corporate bodies: High on Receivers (4 ed.), § 292. The financial statement made on February 14, 1914, shows that the loss up to that time aggregated $828.14. A subsequent report was made by A. H. Gaylord showing that the receipts between January 24, 1914, and April 30th following amounted to $6,088.25; and the monthly overhead expense, including light, water, fuel, telephone, laundry, rent, taxes, salaries of employees, the installments paid to the Equitable Loan & Savings Association and the National Cash Register Company, was $1,141.65. When the receiver was appointed *pendente lite* the corporation was a going business concern, and was neither insolvent nor in such imminent danger of insolvency as to warrant the appointment of a receiver. The evidence does not disclose any material change in conditions when on June 19th the final decree was rendered: *Sabin* v. *Columbia Fuel Co.*, 25 Or. 15 (34 Pac. 692, 35 Pac. 854, 42 Am. St. Rep. 756). Minority stockholders are entitled to protection against fraud or gross and reckless mismanagement on the part of the officers of a private corporation; but, under the evidence, the instant case does not afford an illustration of fraud, and no such mismanagement has been shown as to warrant a court to adopt the extreme measure of taking complete charge of the business and conducting it through a receiver.

6. The defendant P. J. Worrall was in the habit of using liquor owned by the company, and also made a practice of liberally treating patrons of the hotel bar at the expense of the corporation; and on other occasions he used the money and liquor of the corporation for the entertainment of himself and friends, although he contends that it was done for advertising purposes. He cannot use or give away property of the company

in the manner indicated, and should be enjoined from doing so in the future.   While it is impossible to determine with exactness the amount of money and liquor so used and consumed, still we think that $250 will fairly reimburse the company, and therefore the defendant Tillamook Hotel Company is awarded a judgment against P. J. Worrall for that sum.

While the appeal was pending the receiver filed a report and the findings made therein by the trial court are here for review on a separate appeal, and consequently the question of the costs of the receivership will be reserved for determination hereafter.

This suit is dismissed as to the defendants Anna A. Worrall and Charles Kunze; the receiver is directed to turn over to the officers of the corporation all the property in his hands belonging to the Tillamook Hotel Company; the defendants P. J. Worrall, Anna A. Worrall and Charles Kunze are granted judgment against plaintiff for costs and disbursements in this court; but neither plaintiff nor defendants shall have judgment for the costs and disbursements of suit incurred in the Circuit Court.   The decree of the Circuit Court should be modified in conformity with this opinion; and it is so ordered.                                   MODIFIED.

Mr. CHIEF JUSTICE MOORE, MR. JUSTICE EAKIN and MR. JUSTICE BEAN concur.

---

Overruled June 1, 1915.

ON MOTION TO RETAX COSTS.

(149 Pac. 473.)

The respondent objects to some of the disbursements claimed by appellants in their cost bill, and files motion to retax costs.          MOTION OVERRULED.

*Mr. H. T. Botts, Mr. Geo. R. Bagley* and *Mr. Edmund B. Tongue,* for the motion.

*Mr. Ralph R. Duniway* and *Mr. E. J. Claussen,* contra.

Department 2.    MR. JUSTICE HARRIS delivered the opinion of the court.

This is a motion to retax costs.    The decree awarded to the appellants their costs and disbursements in this court.    The cost bill contains an item of $261 paid to the official stenographer for transcribing the testimony after the trial court had decided the cause in order that the testimony might be included as a part of the transcript on appeal.    The plaintiff objects to the item mentioned, and claims that it cannot be taxed as a disbursement in the Supreme Court, but is taxable in the Circuit Court only.

7. Referring to the practice in law actions, this court has held in *De Vall* v. *De Vall,* 57 Or. 128 (109 Pac. 755, 110 Pac. 705), that:

"It is settled that in a law action the sums of money paid by a party to the official reporter as his legal fees must be taxed in the lower court and cannot be entered here as a disbursement."

See, also, *Allen* v. *Standard Box & Lumber Co.,* 53 Or. 10, 18 (96 Pac. 1109, 97 Pac. 555, 98 Pac. 509); *Sommer* v. *Compton,* 53 Or. 341 (100 Pac. 289); *McGee* v. *Beckley,* 54 Or. 250, 254 (102 Pac. 303, 103 Pac. 61); *West* v. *McDonald,* 64 Or. 203 (127 Pac. 784, 128 Pac. 818); *Heywood* v. *Doernbecher Mfg. Co.,* 48 Or. 359, 371 (86 Pac. 357, 87 Pac. 530); *Boothe* v. *Farmers & Traders' Nat. Bank,* 53 Or. 576, 589 (98 Pac. 509, 101 Pac. 390).    In a suit in equity, however, the fees paid to the official stenographer for transcribing the testi-

mony may be taxed as a disbursement in this court.
The cause is tried *de novo* if it be a suit in equity.
The disbursement objected to was for a transcript
which was not used by the trial court. The expense
of preparing a transcript of the testimony in a suit in
equity for the use of the Circuit Court before a deci-
sion of the cause is taxable in the Circuit Court, be-
cause it is in fact a disbursement made for the trial in
that court; and the cost of such transcript is not taxa-
ble in this court under the rule announced in *Albert* v.
*Salem,* 39 Or. 466, 480 (65 Pac. 1068, 66 Pac. 233). If,
however, a transcript of the testimony in a suit in
equity is not prepared until after a decree by the trial
court and is made only for the purpose of the appeal,
then the expense of such transcript is properly taxable
in this court. The question involved in the objection
made by plaintiff was determined in *Young* v. *Hughes,*
39 Or. 586, 597 (65 Pac. 987, 66 Pac. 272):

"The stenographer's notes of the testimony not
having been transcribed when the decree was rendered
in the lower court, it was necessary that a transcript
thereof should be made, in order that the cause might
be tried *de novo* in this court; and, it appearing from
the amended verified statement that the sum of $40
paid therefor is reasonable, it is allowed."

In *Litherland* v. *Cohn Real Estate Co.,* 54 Or. 71,
76 (100 Pac. 1, 102 Pac. 303), a like disbursement was
taxed after making certain deductions from the cost
of the brief and abstract and disallowing the expense
of a carbon copy of the evidence. Since the decision
made in *Young* v. *Hughes,* 39 Or. 586, 597 (65 Pac. 987,
66 Pac. 272), the practice in this court has been to tax
as a disbursement the necessary expense incurred for
a transcript of the testimony in a suit in equity when
such transcript is prepared for the appeal and after a

decision by the trial court. The objection to the cost
bill is overruled.                    Motion Overruled.

Mr. Chief Justice Moore, Mr. Justice Eakin and
Mr. Justice Bean concur.